979 So.2d 182 (2008)
Gary Ray BOWLES, Appellant,
v.
STATE of Florida, Appellee.
Gary Ray Bowles, Petitioner,
v.
Walter A. McNeil, etc., Respondent.
Nos. SC05-2264, SC06-1666.
Supreme Court of Florida.
February 14, 2008.
Rehearing Denied April 3, 2008.
*184 Frank J. Tassone, Jr., and Rick A. Sichta of Frank J. Tassone, P.A., Jacksonville, FL, for Appellant/Petitioner.
Bill McCollum, Attorney General, and Ronald A. Lathan, Jr., Assistant Attorney General, Tallahassee, FL, for Appellee/Respondent.
PER CURIAM.
Gary Ray Bowles appeals an order of the circuit court denying his motion to vacate his sentence of death filed under Florida Rule of Criminal Procedure 3.851 and petitions this Court for a writ of habeas corpus. We have jurisdiction. See art. V, § 3(b)(1), (9), Fla. Const. For the reasons discussed below, we affirm the postconviction court and deny relief on all asserted claims.

STATEMENT OF THE CASE AND FACTS
This Court described the salient facts of the crime in Bowles' first direct appeal, Bowles v. State, 716 So.2d 769, 770-71 (Fla.1998) (Bowles I), but we summarize them again here. In late 1994, Bowles met the victim, Walter Hinton, and agreed to assist him in moving from Georgia to Jacksonville. In return, Hinton allowed Bowles to live with him in Jacksonville. While living with him, Bowles murdered Hinton one night in late November of 1994.
When arrested, Bowles confessed orally and in writing. Bowles indicated he had been drinking alcohol and smoking marijuana on the day of the murder. Bowles stated that after Hinton went to sleep one evening, something inside him "snapped." Bowles then went outside and retrieved a forty-pound concrete block and brought it inside. He set it down on a table and after thinking for a few moments, went into the victim's room and dropped it on Hinton's head. The force of the blow fractured Hinton's right cheek down to his jaw. As Bowles described it, Hinton, then conscious, fell from the bed, and Bowles began to manually strangle him. Bowles then stuffed toilet paper into Hinton's throat and placed a rag into his mouth. The medical examiner testified at trial that the cause of death was asphyxia. Bowles pled guilty to premeditated first-degree murder and was sentenced to death. Bowles I, 716 So.2d at 770-71.
*185 Bowles appealed to this Court, raising ten issues. In Bowles I, we remanded for a new sentencing proceeding because the prosecution had improperly made Bowles' alleged hatred of homosexuals a feature of the sentencing proceeding. Id. at 773. In Bowles v. State, 804 So.2d 1173 (Fla.2001) (Bowles II), this Court described the outcome on remand:
On remand, the resentencing jury unanimously recommended death. In imposing the death penalty the trial court found the following five aggravating circumstances: (1) Bowles was convicted of two other capital felonies and two other violent felonies; (2) Bowles was on felony probation in 1994 when he committed the murder . . .; (3) the murder was committed during a robbery or an attempted robbery, and the murder was committed for pecuniary gain (merged into one factor); (4) the murder was heinous, atrocious, or cruel (HAC); and (5) the murder was cold, calculated, and premeditated (CCP).
The trial court assigned tremendous weight to the prior violent capital felony convictions. On September 27, 1982, in Hillsborough County, Bowles was convicted of sexual battery and aggravated sexual battery. These offenses involved an extremely high degree of violence. . . . On July 18, 1991, Bowles was convicted in Volusia County of unarmed robbery. . . . On August 6, 1997, in Volusia County, Bowles was convicted of first-degree murder and armed burglary of a dwelling with a battery. . . . On October 10, 1996, in Nassau County, Bowles was convicted of first-degree murder. . . .
The trial court assigned great weight to the HAC and CCP aggravators, significant weight to the robbery-pecuniary gain aggravator, and some weight to the fact that Bowles was on probation for robbery at the time of this murder.
The trial court rejected the two statutory mitigators advanced by Bowles: (1) extreme emotional disturbance at the time of the murder and (2) substantially diminished capacity to appreciate the criminality of his acts at the time of the murder. The trial court found and assigned weight to the following nonstatutory mitigating factors: significant weight to evidence that Bowles had an abusive childhood; some weight to Bowles' history of alcoholism and absence of a father figure; little weight to Bowles' lack of education; little weight to Bowles' guilty plea and cooperation with police in this and other cases; little weight to Bowles' use of intoxicants at the time of the murder; and no weight to the circumstances which caused Bowles to leave home or his circumstances after he left home. The trial court concluded that the aggravating circumstances overwhelmingly outweighed the mitigating circumstances.
Id. at 1175-76. On appeal to this Court, Bowles raised twelve issues.[1] We denied *186 all of Bowles' asserted claims and held that Bowles' sentence of death was proportional. Id. at 1177-84.
On August 29, 2003, Bowles filed a Florida Rule of Criminal Procedure 3.851 motion for postconviction relief, asserting nine claims.[2] Bowles also filed a "Motion to Reopen Testimony," arguing that Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), required reversal because he was denied the opportunity to confront his accusers. The postconviction court rejected the first three claims as procedurally barred, either because they were raised or should have been raised on direct appeal. It denied claims four through seven and Bowles' motion to reopen testimony based on our prior cases addressing Ring, Apprendi, and Crawford.
In the remaining two issues, Bowles asserted that trial counsel were ineffective for failing to adequately investigate and present mitigating evidence, and for failing to discover and present evidence rebutting the State's proof of the HAC aggravating factor. Id. The postconviction court rejected both. Bowles now appeals five of his postconviction claims to this Court and petitions for a writ of habeas corpus, arguing appellate counsel was ineffective.

II. MENTAL MITIGATION
Bowles' first argument is that his trial counsel were ineffective for failing to present an expert to testify to mental mitigation. Following the United States Supreme Court's decision in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), we have held that for ineffective assistance of counsel claims to be successful, two requirements must be satisfied:
First, the claimant must identify particular acts or omissions of the lawyer that are shown to be outside the broad range of reasonably competent performance under prevailing professional standards. Second, the clear, substantial deficiency shown must further be demonstrated to have so affected the fairness and reliability of the proceeding that confidence in the outcome is undermined. A court considering a claim of ineffectiveness of counsel need not make a specific ruling on the performance component of the test when it is clear that the prejudice component is not satisfied.
Maxwell v. Wainwright, 490 So.2d 927, 932 (Fla.1986) (citations omitted).
Because both prongs of the Strickland test present mixed questions of law *187 and fact, this Court employs a mixed standard of review, deferring to the circuit court's factual findings that are supported by competent, substantial evidence but reviewing the circuit court's legal conclusions de novo. See Sochor v. State, 883 So.2d 766, 771-72 (Fla.2004).
Bowles argues that his trial counsel should have called an expert to testify to various mitigating facts, including: the effects of Bowles' lifelong alcohol and drug abuse; Bowles' low IQ; Bowles' abusive childhood; and Bowles' neuropsychological impairment. Specifically, Bowles argues that these facts should have been linked to the statutory mitigators of extreme emotional disturbance and diminished capacity to appreciate the criminality of the homicide. He argues that counsel were deficient for not presenting testimony on these facts, such as the testimony counsel had from the expert retained to examine Bowles, Dr. Elizabeth McMahon.
Dr. McMahon stated in a deposition introduced at the postconviction evidentiary hearing that Bowles was "probably not working with what we would say is an intact brain" and that he had "some very mild dysfunction." She elaborated that in her clinical opinion, this dysfunction was not significant. She concluded that Bowles did not show evidence of frontal lobe problems. She also stated that Bowles has "a great deal of underlying hostility and anger towards other people" and what she tentatively referred to as a "reservoir of rage." Dr. McMahon was aware of three additional murders that Bowles had committed, which the State was not going to introduce unless the defense opened the door to them. Dr. McMahon stated that she would have to discuss these other murders if she were to testify for Bowles. Dr. McMahon stated that she and Bill White, Bowles' lead trial counsel, discussed several times whether she should testify and that her testimony would "open a line of questioning on cross that is going to be devastating to [Bowles]."
Dr. Harry Krop, a clinical psychologist retained by Bowles for the postconviction proceedings, also testified at the evidentiary hearing. He stated that he had no dispute with Dr. McMahon's qualifications or capabilities, but he disagreed with her findings. He believed that she should have done further neuropsychological studies for brain impairment based on the results of the tests that she gave Bowles and Bowles' history of substance abuse. Dr. Krop concluded that Bowles suffered from mild to moderate frontal lobe impairment. He also found that Bowles had deficits in memory, some of which were significant.
Dr. Krop also testified, however, that Bowles told him that "it bothers him [that] he killed six people who probably didn't deserve to die." Thus, Dr. Krop was aware of the three additional murders that were not otherwise introduced at the resentencing proceeding. Dr. Krop stated that Bowles did not have an impairment in understanding the difference between right and wrong. He stated that given Dr. McMahon's deposition, he understood why trial counsel chose not to have Dr. McMahon testify.
On the basis of this testimony, Bowles argues that trial counsel were deficient for declining to have an expert testify. There are thus two aspects of Bowles' allegations: (1) trial counsel were ineffective for not calling Dr. McMahon to testify; and (2) trial counsel were ineffective generally for failing to call an expert witness to substantiate Bowles' mental mitigators. We address each below.

A. Failure to Call Dr. McMahon
The postconviction court denied the first claim after careful analysis. The crux *188 of its denial is summarized in its statement that:
Bowles' trial counsel recognized that some of Dr. McMahon's testimony would be helpful, but also recognized that some of her opinions about Bowles' personality would be harmful. . . . After weighing the benefit of her testimony against its potential harm, trial counsel made a strategic trial decision not to call Dr. McMahon.
State v. Bowles, CR-A 16-1994-CF-12188-AXXX-MA (Fla. 4th Cir. Ct. order filed Aug. 12, 2005) (Postconviction Order) at 9. Specifically, the postconviction court noted that Dr. McMahon would have testified that: (1) Bowles was only mildly impaired; (2) his impairment did not stem from problems with his brain; (3) Bowles possessed rage; (4) he had poor impulse control; and (5) Bowles had an impairment in empathy. Given these facts, the postconviction court held it was reasonable not to have Dr. McMahon testify.
The postconviction court also considered Dr. Krop's testimony. It noted that Dr. Krop faulted Dr. McMahon for not performing a comprehensive neurological examination of Bowles. It also noted that Dr. Krop testified that it was possible that Bowles suffered from an organic brain impairment, including a "likelihood of frontal lobe impairment." Id. at 10. The postconviction court concluded that Bowles' claim was nevertheless insufficient because, "[e]ven had [Dr. Krop testified], the court is not convinced that the outcome would have been any different in light of the overwhelming evidence of aggravation in this case." Id. at 11.
Finally, the postconviction court concluded that trial counsel made a strategic decision not to have Dr. McMahon testify:
Trial counsel decided not to present Dr. McMahon as a witness after weighing the benefit of her testimony against its potential harm. This decision was made after a thorough investigation of existing mitigation and careful analysis of Dr. McMahon's testimony by Bowles' attorneys. It was a strategic trial decision for which lawyers are given wide latitude. Considering Dr. McMahon's views regarding Bowles' lack of empathy and dangerousness and her own statements that her testimony would have been "devastating" to Bowles, and Dr. Krop's testimony that even some of his opinions regarding Bowles anti-social traits (which he felt would be harmful but could be explained to a jury), the Court concludes that trial counsel acted in a prudent manner in deciding against presenting Dr. McMahon as a witness.
Id. at 10-11 (record reference and citations omitted).
Competent, substantial evidence supports the postconviction court's conclusion that this decision was strategic. The decision was also reasonable. Dr. McMahon was a very risky witness to present. She was a well-qualified clinical psychologist who concluded that Bowles did not suffer from anything beyond mild impairments. She further concluded that he was impulsive and dangerous. She stated that she would have to discuss three other murders that would not otherwise be introduced. It was not unreasonable for trial counsel to withhold her testimony from the jury. Because the decision was reasonable, Bowles' trial counsel were not ineffective under Strickland. See, e.g. Gaskin v. State, 822 So.2d 1243, 1248 (Fla.2002) ("Trial counsel will not be held to be deficient when she makes a reasonable strategic decision to not present mental mitigation testimony during the penalty phase because it could open the door to other damaging testimony.").[3]

*189 B. Counsel Ineffective for Failing to Call Expert
Bowles next alleges that counsel were ineffective for failing to call an expert to substantiate his mental mitigators. The postconviction court did not discuss this aspect of Bowles' claim in detail, though it did note:
As to any suggestion by Bowles that trial counsel were somehow ineffective by the selection of Dr. McMahon as an expert or that [she] was not a competent psychologist, the Court finds no merit to these claims. Dr. Krop recognized Dr. McMahon as a competent psychologist with more experience than himself in administering neuropsychological tests. Nor does the court find that trial counsel improperly deferred to Dr. McMahon the responsibility to make legal decisions regarding matters of mental health mitigation.
Postconviction Order at 11 (citation omitted). We have previously rejected similar claims to those made by Bowles. See Dufour v. State, 905 So.2d 42, 56 (Fla.2005) ("There was evidence of clear justification for not utilizing [the consulted expert] as a witness [and] . . . [t]rial counsel was not ineffective simply because after receiving an initial unfavorable report from [one expert] they did not proceed further to seek additional experts for mental mitigation evidence."). Just as in Dufour, counsel consulted with an expert and received an unfavorable report. Based on this result, they chose not to have the expert, Dr. McMahon, testify. It was reasonable to rely on Dr. McMahon's results and not seek an additional expert. Accordingly, Bowles has not demonstrated that his counsel were deficient on this claim.

C. Counsel Ineffective in Spencer Hearing
Lastly, Bowles claims that counsel were deficient for not presenting Dr. McMahon's testimony at his Spencer[4] hearing. He argues that a primary reason counsel gave for not calling Dr. McMahon was that some of her testimony might negatively influence the jury. This concern would not exist in the Spencer hearing because the jury would not be present for it.
Trial counsel's choice not to present Dr. McMahon's testimony in the Spencer hearing does not meet the requirements of ineffective assistance in Strickland. The clinical observations that Dr. McMahon made could have undercut the nonstatutory mitigating evidence found by the trial court. Her testimony still contained negative aspects. Thus, it was still a reasonable strategic decision to not present Dr. McMahon's testimony.
Further, even if counsel had been deficient in omitting Dr. McMahon's testimony from the Spencer hearing, Bowles has not shown that he was prejudiced by it. The trial court concluded that the aggravators "overwhelmingly" outweighed the mitigators. Dr. McMahon would at best have stated that Bowles had some deficiencies that did not rise above the level of mild impairment. Dr. Krop could not offer significantly *190 more positive testimony. And both experts posed a risk of revealing the other murders committed by Bowles. In light of these facts, Bowles has not established that this Court's confidence in the resentencing should be undermined. Accordingly, he has not proven prejudice, and we deny relief on this claim.

II. HAC AGGRAVATOR
In Bowles' second claim, he argues that trial counsel should have refuted the State's expert, Dr. Margarita Arruza, on applicability of the HAC aggravator. Bowles' claim thus has two aspects: (1) the trial court improperly found that HAC applied; and (2) trial counsel were ineffective for failing to retain an expert to review and challenge Dr. Arruza's findings. To the extent that Bowles challenges the trial court's finding of HAC, his claim is procedurally barred. Marquard v. State, 850 So.2d 417, 433 (Fla.2002) (rejecting a claim previously raised as procedurally barred); Bowles II, 804 So.2d at 1179 (rejecting that HAC was improperly found). As to Bowles' ineffective assistance claim, the standard as described above is whether counsel were deficient and whether Bowles suffered any prejudice as a result of the alleged deficiency. Strickland, 466 U.S. 668, 104 S.Ct. 2052.
The postconviction court denied this claim. After reviewing the written confession that Bowles gave, the court noted that Dr. Arruza's testimony at the sentencing hearing agreed with the version of the murder that Bowles himself had provided. The postconviction court then reviewed the testimony of Dr. Ronald Keith Wright, an expert retained by Bowles for his postconviction proceedings. The court reasoned that Dr. Wright's version of the murder as explained at the evidentiary hearing "did not make the circumstances of this killing any less aggravating."
We affirm the postconviction court on this claim. Bowles' argument that it was unreasonable for Mr. White to choose not to obtain an expert to review and challenge Dr. Arruza's findings is substantially undercut by his own confession. Bowles told various parties that he dropped a forty-pound block on Hinton's head, struggled with Hinton, strangled the victim to death, and stuffed a rag in his mouth. White stated at the postconviction hearing that he relied on this confession and that Bowles remembered and described the murder clearly. It was reasonable for counsel to conclude that Bowles' confession was accurate and to choose not to retain an expert to contest Dr. Arruza's findings, which were consistent with Bowles' version of the murder.
Bowles argues that counsel's decision not to retain an expert to review or challenge Dr. Arruza's findings cannot be strategic because White stated that he did not consider putting on an expert to rebut Dr. Arruza's testimony. We reject this argument based on trial counsel's clear statement to the contrary:
[STATE]: Okay. Now in terms of your strategy for cross examination of Dr. Arruza and also more importantly for not calling an expert, medical examiner to potentially rebut Dr. Arruza's findings, were you relying on the defendant's statements given to the police and to you all in terms of details about how the murder occurred?
[BILL WHITE]: That'sI mean the reason for not calling another expert is that all of the evidence that was going to be admitted was at least from what we could see consistent with the fact that the deceased was at the time the block hit his head with his head on the mattress and on the box spring that he was probably to some degree conscious and Gary had told us and had told all of the *191 law enforcement officers that he struggled with him and that was the reason for not calling another expert which we have done in other cases. We have used Dr. Wright as a matter of fact.
(Emphasis added.)
Accordingly, we deny Bowles' second claim since his counsel made a reasonable strategic decision to rely on Bowles' own confession, and Bowles has not shown prejudice since his expert's proffered version of events was equally horrific, if not more horrific, than the version of the murder presented by Dr. Arruza at the resentencing hearing.

III. MENTAL MITIGATION SUMMARY DENIAL
In this claim, Bowles argues that the postconviction court inappropriately summarily denied a postconviction claim below. Bowles thus requests that we remand for an evidentiary hearing on whether his trial counsel were ineffective. Bowles states that his claim below was that trial counsel were ineffective for failing to sufficiently present mental mitigation evidence. The postconviction court denied this claim, stating:
In claim one, Bowles alleges that trial counsel were deficient in presenting mental health mitigation and that the Court erred in not finding the existence of the two mental mitigators when the evidence supported said mitigators. Initially, the Court notes that allegations of trial court error could and should have been raised on direct appeal. Moreover, the instant allegation of error by the trial court was in fact raised and rejected by the Florida Supreme Court on direct appeal. Bowles v. State, 804 So.2d 1173, 1180-83 (Fla.2001). Bowles, having raised this claim on direct appeal, is procedurally barred from raising it again in a motion for post-conviction relief. Accordingly, the instant claim is procedurally barred. Further, to the extent Bowles alleges ineffective assistance of counsel, Bowles may not attempt to circumvent this procedural bar by inserting conclusory allegations of ineffective assistance of counsel. Thompson v. State, 796 So.2d 511, [515] n. 5 (Fla.2001); Lopez v. Singletary, 634 So.2d 1054, 1057 (Fla.1993). Accordingly, the instant claim is denied.
Postconviction Order at 11-12 (citations omitted).
We affirm the postconviction court on this issue. Bowles' postconviction motion below raised two claims: (1) that the trial court erred in not finding the existence of two mental mitigators; and (2) that trial counsel were deficient in presenting mental mitigation. As to the first, this claim was raised and rejected by this Court on direct appeal. Bowles II, 804 So.2d at 1180-83. Accordingly, it is procedurally barred.
As to the second, competent, substantial evidence supports the postconviction court's finding that Bowles' allegations below of ineffective assistance of counsel were insufficient. Florida Rule of Criminal Procedure rule 3.851(e)(1)(D) requires that a 3.851 motion include "a detailed allegation of the factual basis for any claim for which an evidentiary hearing is sought." Bowles' claim below did not include a detailed allegation of a factual basis for an ineffective assistance of counsel claim. In fact, it contained essentially no such basis in fact or law. At best, four sentences out of five and a half pages of argument addressed trial counsel's ineffectiveness; the remainder addressed trial court error. These four sentences alleged that counsel failed to present sufficient mental mitigation evidence, without explaining what evidence should have been presented, and that counsel failed to investigate *192 and present evidence concisely, without explaining how the presentation was flawed or what should have been investigated or citing any examples of either.
Accordingly, because Bowles' conclusory arguments on ineffective assistance of counsel are insufficient and an attempt to relitigate issues that are procedurally barred, we deny relief on this claim.

IV. RING AND APPRENDI

In this claim, Bowles "reincorporates" thirty-five pages of his postconviction motion into his instant brief without further explanation. The sum of these arguments, which are located only in the postconviction motion and not in Bowles' instant brief, are that Florida's death penalty statute violates Ring and Apprendi because: (1) it allows a judge to find an element of capital murder; (2) it does not meet the heightened evidentiary requirements of a death penalty scheme; (3) it does not require charging the aggravators in the indictment; and (4) it does not require a unanimous jury verdict.
The postconviction court denied this claim, stating that Ring is not retroactive and citing to over forty cases where this Court has rejected similar claims. Next, the postconviction court denied relief on the basis of Apprendi, citing to seven cases where this Court rejected the same argument made by Bowles here. Finally, the postconviction court rejected Bowles' argument that Ring and Apprendi require a unanimous jury vote, noting that this Court has repeatedly rejected this claim and that the resentencing jury here had in fact returned a unanimous verdict.
This Court has repeatedly and explicitly rejected the arguments Bowles asserts.[5] Bowles' conviction and sentence were final when Ring was issued. Additionally, Bowles' claim is meritless since one of the aggravating circumstances found by the trial court in this case was Bowles' prior conviction of a violent felony, "a factor which under Apprendi and Ring need not be found by the jury." Jones v. State, 855 So.2d 611, 619 (Fla.2003). Accordingly, because this Court has repeatedly rejected the arguments Bowles asserts, we deny relief on this claim.

V. CRAWFORD

In this claim, Bowles argues that the postconviction court erred in summarily denying his claim that the testimony of Officer Jan Edenfield as to his 1982 sexual battery and aggravated sexual battery convictions violated his Confrontation Clause[6] rights under Crawford. The postconviction court denied this claim, concluding that any error was harmless, both because the testimony at issue was not necessary to establish Bowles' convictions and because the other five aggravators made any *193 error harmless. Bowles concedes that this Court already considered and held that part of this issue was only harmless error. Bowles II, 804 So.2d at 1184. We have also held that Crawford is not retroactive. Chandler v. Crosby, 916 So.2d 728 (Fla. 2005). Bowles' conviction and sentence were both final when Crawford was issued. Accordingly, we deny relief on this claim.

VI. HABEAS CLOSING ARGUMENT ISSUE
In Bowles' first habeas claim, he asserts that certain comments made by the prosecutor in closing arguments were error and that his appellate counsel was ineffective for failing to raise this properly preserved issue. Claims of ineffective assistance of appellate counsel are appropriately presented in a petition for writ of habeas corpus. See Freeman v. State, 761 So.2d 1055, 1069 (Fla.2000). Consistent with the Strickland standard, to grant habeas relief based on ineffectiveness of counsel, this Court must determine
first, whether the alleged omissions are of such magnitude as to constitute a serious error or substantial deficiency falling measurably outside the range of professionally acceptable performance and, second, whether the deficiency in performance compromised the appellate process to such a degree as to undermine confidence in the correctness of the result.
Pope v. Wainwright, 496 So.2d 798, 800 (Fla.1986); see also Freeman, 761 So.2d at 1069; Thompson v. State, 759 So.2d 650, 660 (Fla.2000). In raising such a claim, "[t]he defendant has the burden of alleging a specific, serious omission or overt act upon which the claim of ineffective assistance of counsel can be based." Freeman, 761 So.2d at 1069; see also Knight v. State, 394 So.2d 997, 1001 (Fla.1981). "If a legal issue `would in all probability have been found to be without merit' had counsel raised the issue on direct appeal, the failure of appellate counsel to raise the meritless issue will not render appellate counsel's performance ineffective." Rutherford v. Moore, 774 So.2d 637, 643 (Fla. 2000) (quoting Williamson v. Dugger, 651 So.2d 84, 86 (Fla.1994)).
The first allegedly improper comment made by the prosecutor during closing argument was:
[STATE]: The mitigators presented to you yesterday, and the instructions that the Court will read to you regarding what possible mitigators may exist in terms of your decision as to how much weight  first of all, if they do exist, how much weight they should be given [sic] are arguably accepted. And I would submit to you the question is how much weight do you put to the three mitigators that are going to be submitted to you.

MR. WHITE: Objection, Your Honor, to numbering the mitigators.
THE COURT: Sustained.
(Emphasis added.) Later, the prosecutor made the second allegedly improper comment:
[STATE]: And the law requires you to evaluate the aggravators, how much weight do you give them? I would submit there is substantial weight there. And I would submit the mitigators in this case have not been proven in terms of the statutory ones, and then there is one that's a catchall that
MR. WHITE: Objection to that characterization of the mitigators, Your Honor.
THE COURT: Sustained.
MR. WHITE: Your Honor, I would ask for a curative instruction.

*194 THE COURT: The jury should disregard the comments of catchall. Proceed.
(Emphasis added.) Bowles argues that these comments denigrated his mitigation and told the jury that his mitigation was limited to three mitigators. Bowles further states that the prosecutor effectively told the jury that it was a "numbers game" and all that the jury had to do was add up and compare the number of mitigators versus aggravators.
As this Court has noted, "[a]ny error in prosecutorial comments is harmless if there is no reasonable probability that those comments affected the verdict." Hitchcock v. State, 755 So.2d 638, 643 (Fla. 2000) (citing King v. State, 623 So.2d 486, 487 (Fla.1993)). Bowles has not demonstrated a reasonable probability that these comments affected the verdict. Therefore, this claim was meritless. Counsel cannot be ineffective for failing to raise a meritless claim. Rutherford, 774 So.2d at 643.
Accordingly, we deny relief on this claim.

VII. HABEAS PHOTOGRAPH ISSUE
In Bowles' final claim, he alleges that the introduction of seven photographs was error and that his appellate counsel was ineffective for not raising this issue on appeal. As above, the standard for an ineffective assistance of appellate counsel claim is, consistent with Strickland, deficiency and prejudice.
This Court has held that photographs are admissible if they are probative to an issue in dispute and they are not so shocking as to defeat their value. Looney v. State, 803 So.2d 656, 668-70 (Fla. 2001). Admission of photographs is a matter for the discretion of the trial court, and this Court has held it will not disturb such rulings absent a clear abuse of discretion. Rodriguez v. State, 919 So.2d 1252, 1286 (Fla.2005). "The test for admissibility of . . . photographs is relevancy rather than necessity." Id.
The photographs at issue here were relevant to issues in dispute at trial. They were relevant to how this murder was committed, to support the State's argument that the murder was a deliberate act, and to support the applicability of the HAC aggravator. We have previously held that similar bases were valid grounds for admitting photographs. See England v. State, 940 So.2d 389, 399-400 (Fla.2006) (eleven photos of bloated, decomposed victim with flesh sloughing off and insect larvae in wounds were relevant to HAC, defensive wounds, extent of wounds, manner of death, and position of body); Arbelaez v. State, 898 So.2d 25, 44 (Fla.2005) (ten photos of victim by dock were relevant to location of body, explanation of autopsy findings, and that victim did not die by accidental drowning as defendant alleged). While the instant photographs are disconcerting, they were relevant. We cannot conclude that it was a clear abuse of discretion to admit them, and thus appellate counsel was not ineffective in declining to raise this meritless issue.
Accordingly, we deny this claim.

CONCLUSION
For the foregoing reasons, we affirm the denial of Bowles' postconviction claims and deny his petition for writ of habeas corpus.
It is so ordered.
LEWIS, C.J., and WELLS, ANSTEAD, PARIENTE, QUINCE, CANTERO, and BELL, JJ., concur.
NOTES
[1] The twelve claims were: (1) the trial court erred in allowing the use of peremptory challenges to remove prospective jurors who were in favor of the death penalty; (2) the trial court erred in allowing the introduction of two prior murders for which the defendant was convicted after the first sentencing hearing; (3) the trial court erred in finding the HAC aggravator; (4) the trial court erred in rejecting the proposed HAC jury instruction; (5) the CCP instruction to the jury was unconstitutionally vague; (6) the trial court erred in finding the robbery-pecuniary gain aggravator; (7) the trial court erred by giving little or no weight to nonstatutory mitigators; (8) the trial court erred in rejecting the proposed victim impact evidence jury instruction; (9) the trial court erred by rejecting the statutory mental mitigators extreme emotional disturbance at the time of the murder and substantially diminished capacity to appreciate the criminality of acts at the time of the murder; (10) the trial court erred in giving the standard jury instruction on mitigation instead of the requested instructions; (11) the trial court erred by rejecting the requested jury instructions defining mitigation; and (12) the trial court erred by allowing impermissible hearsay. Bowles II, 804 So.2d at 1176.
[2] The claims were: (1) trial counsel were ineffective for failing to present statutory and nonstatutory mental mitigation, and the trial court erred in finding the two statutory mental mitigators were not proven; (2) the trial court erred in refusing to give the defense's requested jury instructions defining mitigation; (3) the trial court erred in instructing the jury that it could consider victim impact evidence; (4) and (5) Florida's death penalty scheme is unconstitutional under Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002); (6) Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and Ring required the elements of the offense necessary to establish capital murder be charged in the indictment; (7) Apprendi and Ring required the jury recommendation of death be unanimous; (8) trial counsel were ineffective for failing to adequately investigate and present mitigating evidence; and (9) trial counsel were ineffective for failing to discover and present evidence rebutting the State's proof of the HAC aggravating factor. Bowles' claims 8 and 9 were misnumbered in his postconviction motion as claims 9 and 10, respectively.
[3] Bowles also argues that guidelines 10.7(A), 10.11(A), and 10.11(F) of the ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases give explicit instructions on how counsel in death cases should investigate and present mitigating evidence and that, under these Guidelines, trial counsel were ineffective. However, Bowles does not allege any specific ways in which trial counsel failed to meet the ABA Guidelines. Further, the Guidelines are not inconsistent with trial counsel's actions. Accordingly, we deny this claim.
[4] Spencer v. State, 615 So.2d 688 (Fla.1993).
[5] See, e.g. Nixon v. State, 932 So.2d 1009, 1024 (Fla.2006) (Ring is not retroactive to cases that were final when it was issued); Rodgers v. State, 948 So.2d 655, 673 (Fla. 2006) (rejecting Ring claim when one of aggravating factors is prior felony conviction; rejecting that Ring requires aggravators be alleged in indictment and a unanimous jury verdict); Johnson v. State, 904 So.2d 400, 412 (Fla.2005) (holding Ring is not retroactive in Florida); Blackwelder v. State, 851 So.2d 650, 654 (Fla.2003) (aggravating circumstances need not be alleged in indictment or be found by unanimous verdict), cert. denied, ___ U.S. ___, 128 S.Ct. 59, 169 L.Ed.2d 50 (2007); Brown v. Moore, 800 So.2d 223, 224-25 (Fla. 2001) (stating Apprendi does not require that aggravating circumstances be proven in indictment or that jury verdict be unanimous, and thus counsel was not ineffective for failing to allege such).
[6] "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const., amend VI.