PER CURIAM.
Paul G. Everett appeals an order of the circuit court denying his motion to vacate his conviction of first-degree murder and sentence of death filed under Florida Rule of Criminal Procedure 3.851. Everett also petitions this Court for a writ of habeas corpus. We have jurisdiction. See art. V, § 3(b)(1), (9), Fla. Const. For the reasons expressed below, we affirm the postconviction court’s order and deny the petition for a writ of habeas corpus.
I. BACKGROUND
Everett was convicted of first-degree murder and sentenced to death for the 2001 killing of Kelly M. Bailey. This Court set out the facts of the case on direct appeal:
[Djuring the late afternoon or early evening of November 2, 2001, appellant approached Kelly M. Bailey’s home, looking for money and carrying a wooden fish bat or billy club. A stranger to the victim, appellant entered her home uninvited. When Ms. Bailey confronted him, appellant beat her, and as she tried to escape, knocked her down and raped her. He also forcefully twisted her neck, breaking a vertebra, which paralyzed her and caused her to suffocate to death. Before leaving, appellant removed his t-shirt, but he took with him some money from the victim’s purse, his fish bat, her credit card, and her sweater. Outside the house, he discarded all but the cash. The victim suffered multiple injuries: a knocked-out tooth; a fractured nose; swollen eyelids; lacerations and bruising of her lips; a lacerated lip through which her teeth protruded; abrasions and carpet burns; a broken neck; and vaginal abrasion evidencing the use of force and consistent with nonconsensual sexual intercourse.
Appellant was indicted on charges of first-degree murder, burglary of a dwelling with a battery, and sexual battery involving serious physical force. Among other evidence at trial, the fish bat was traced to the appellant and his DNA matched the vaginal swabs from the vie- *470 tim on all thirteen genetic markers tested.
Everett v. State, 893 So.2d 1278, 1280 (Fla.2004). Moreover, regarding Everett’s apprehension and confession to the crimes, this Court set forth the facts as follows.
Within hours of the murder, an Alabama bail bondsman, unaware of the murder but searching for Everett because he was a fugitive, found him in Panama City, Florida, and transferred him to Alabama authorities. On November 14, 2001, roughly two weeks after the murder, two Panama City Beach police officers investigating the case, having traced the wooden fish bat found near the crime scene to Everett, traveled to Alabama. They read Everett his rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and Everett agreed to talk. During the questioning, however, he abruptly stated, “I wish to have a lawyer present.... I mean I want a lawyer.” The officers immediately stopped their questioning.
Several days later, on November 19, the Panama City Beach Police requested an Alabama deputy to ask Everett to provide DNA samples for the Florida murder investigation. Everett consented both verbally and in writing. After the DNA swabs were taken, however, Everett advised the Alabama deputy that he had information for Florida authorities. The officer read Everett his Miranda rights, and Everett began his statement. At that point Sergeant Til-ley of the Panama City Beach Police Department arrived to retrieve the DNA samples. On the record, Tilley noted that Everett had previously invoked his right to counsel, but had now contacted him desiring to provide information. Sergeant Tilley also read Everett his Miranda rights before Everett continued. At the conclusion of his statement, Everett said, “I do want to talk to a lawyer, but I did want to let you know to get you in the right direction.” Sergeant Tilley immediately stopped.the interview. Appellant’s November 19 statement was not offered at trial.
Finally, on November 27, Alabama authorities informed Everett that Sergeant Tilley was en route to serve an arrest warrant for the Florida murder. After Sergeant Tilley served the warrant, Everett asked to speak to him. At the outset of the interview, Everett acknowledged that he had previously invoked his right to have counsel present but had now asked to speak to Sergeant Tilley without an attorney present. In the ensuing statement, Everett confessed to the crimes.
Everett, 893 So.2d at 1283 (citation omitted).
The jury found Everett guilty on each charge and, following the penalty phase, unanimously recommended that Everett be sentenced to death for his first-degree murder conviction. Id. at 1280. The sentencing court imposed the death sentence. Id. at 1281. The sentencing court found three aggravating circumstances and five statutory and four nonstatutory mitigating circumstances applicable to the murder. Id. at 1280-81. Everett appealed his first-degree murder conviction and death sentence. This Court affirmed the conviction and sentence. Id. at 1288.
In March 2006, Everett filed a motion for postconviction relief. The motion raised twelve issues, some of which included subparts. In most of his claims, Everett asserted ineffective assistance by trial counsel, Assistant Public Defender Walter Smith. After holding a hearing on the motion pursuant to Huff v. State, 622 So.2d 982, 983 (Fla.1993), the postconvic *471 tion court entered an order denying relief in part and granting an evidentiary hearing on Everett’s claims of ineffective assistance of counsel. The postconviction court conducted an evidentiary hearing and, after considering the evidence presented, denied the motion.[1] In this appeal, Everett raises eleven issues.[2] In addition, Everett filed a petition for a writ of habeas corpus, raising seven claims.
II. MOTION FOR POSTCONVICTION RELIEF
On appeal from the denial of postconviction relief, Everett raises eleven issues. He raises four guilt-phase ineffective assistance of counsel claims, asserting that counsel was ineffective due to his (a) failure to adequately communicate with Everett; (b) failure to adequately present Everett’s Miranda argument at the pretrial suppression hearing; (c) failure to adequately challenge forensic serological evidence and object to an unqualified witness opining on that evidence; and (d) failure to adequately represent Everett by presenting the lead police detective as the sole defense witness. Everett also raises four penalty-phase ineffective assistance of counsel claims, asserting that counsel was ineffective due to his (a) improper reliance upon Everett’s alcoholic father for mitigation; (b) failure to present evidence that Everett had no male role model other than his alcoholic father and that Everett was denied a stable upbringing; (c) failure to consult with a psychological or psychiatric professional for purposes of establishing mitigation; and (d) failure to introduce evidence about Everett’s drug use. Everett presents three additional arguments. He contends that the cumulative effect of the errors and omissions of counsel in the guilt and penalty phases warrants relief. He asserts that the postconviction court erred in summarily denying his claim that Florida’s death penalty procedures violate due process. Finally, Everett argues that the postconviction court erred in summarily denying his challenge to Florida’s lethal injection procedures.
A. Claims of Ineffective Assistance of Counsel
In order to prevail on a claim of ineffective assistance of counsel, a defendant must show both that trial counsel’s performance was deficient and that the deficient performance prejudiced the defendant so as to deprive him of a fair trial. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). As to the first prong, the defendant must establish that “counsel made errors so serious that counsel was not functioning as the ‘counsel’ guaranteed the defendant by the Sixth Amendment.” Id. at 687, 104 *472 S.Ct. 2052; see also Cherry v. State, 659 So.2d 1069, 1072 (Fla.1995). For the second prong, “Strickland places the burden on the defendant, not the State, to show a ‘reasonable probability’ that the result would have been different.” Wong v. Belmontes, — U.S. -, 130 S.Ct. 383, 390-91, 175 L.Ed.2d 328 (2009) (quoting Strickland, 466 U.S. at 694, 104 S.Ct. 2052). Strickland does not “require a defendant to show ‘that counsel’s deficient conduct more likely than not altered the outcome’ of his penalty proceeding, but rather that he establish ‘a probability sufficient to undermine confidence in [that] outcome.’ ” Porter v. McCollum, — U.S. —, 130 S.Ct. 447, 455-56, 175 L.Ed.2d 398 (2009) (alteration in original) (quoting Strickland, 466 U.S. at 693-94, 104 S.Ct. 2052).
“[T]his Court’s standard of review is two-pronged: (1) this Court must defer to the circuit court’s findings on factual issues so long as competent, substantial evidence supports them; but (2) must review de novo ultimate conclusions on the deficiency and prejudice prongs.” Reed v. State, 875 So.2d 415, 421-22 (Fla.2004) (citing Stephens v. State, 748 So.2d 1028, 1033 (Fla.1999) (“Thus, under Strickland, both the performance and prejudice prongs are mixed questions of law and fact, with deference to be given only to the lower court’s factual findings.”)).
1. Guilt-Phase Claims of Ineffective Assistance of Counsel
a. Communication With Everett
i. Advising Everett While in Alabama Custody
First, Everett argues that attorney Smith was ineffective for failing to communicate with and advise Everett not to speak to law enforcement officers while Everett was in the Baldwin County Jail, in Baldwin County, Alabama. Because attorney Smith had not then been appointed to represent Everett, attorney Smith was not ineffective for failing to communicate with Everett while Everett was in Alabama custody — before Everett was ever charged with any Florida offense. The postconviction court did not err in denying this claim.
Chapter 27, Florida Statutes (2001), and Florida Rule of Criminal Procedure 3.111 offer guidance on when a public defender is “representing” a defendant. Section 27.51(l)(a), Florida Statutes (2001), provides in pertinent part that “[t]he public defender shall represent ... any person who is determined by the court to be indigent as provided in s. 27.52 and who is ... [u]nder arrest for, or is charged with, a felony.” Section 27.51(2) adds that “[t]he court may not appoint the public defender to represent, even on a temporary basis, any person who is not indigent.” § 27.51(2). Chapter 27 is in agreement with Florida Rule of Criminal Procedure 3.111(a), which provides that “[an indigent] person entitled to appointment of counsel ... shall have counsel appointed when the person is formally charged with an offense, or as soon as feasible after custodial restraint, or at the first appearance before a committing magistrate, whichever occurs earliest.” Rule 3.111(b)(5) states also that “[b]efore appointing a public defender, the court shall ... make inquiry into the financial status of the accused in a manner not inconsistent with the guidelines established by section 27.52, Florida Statutes. The accused shall respond to the inquiry under oath.” Finally, the rules provide that the court shall “require the accused to execute an affidavit of insolvency as required by section 27.52, Florida Statutes.” Fla. R.Crim. P. 3.111(b)(5)(C).
In this case, at the time that Everett was in Alabama and gave statements to law enforcement officers, the Florida trial *473 court had not determined that Everett was indigent, as required by both sections 27.51-52 and rule 3.111(b)(5). Likewise, attorney Smith had not been appointed as counsel and was not “representing” Everett according to sections 27.51-52 and rule 3.111 because Everett had not been formally charged, was not under custodial restraint in Florida, and had not had a first appearance for his Florida charges. Specifically, Everett made statements to law enforcement in November 2001, while in Alabama custody for an Alabama charge; Everett was indicted for the Florida crimes in late January 2002; and the trial court determined that Everett was entitled to a Florida public defender in late February 2002 upon determining that Everett was indigent. Based on this time-line, it was impossible for attorney Smith, as an assistant public defender, to have been “representing” Everett at the time that Everett made the statements in Alabama. Because attorney Smith was not yet representing Everett as defined by Florida Law, attorney Smith was not yet responsible for advising Everett.
ii. Getting Along With Everett
Second, Everett argues that attorney Smith was ineffective because attorney Smith did not get along with Everett and disbelieved much of what Everett told him about the offenses. During the postcon-viction evidentiary hearing, attorney Smith testified that he and Everett did not get along well and explained:
I don’t get along with a lot of my clients, you know, and I understand why. They’re in — I’m over there telling them, look, the best you’re going to get is a life sentence, there is not much I can do for you, you know, your confession is coming in, all this evidence is coming in. They don’t want to hear that. They want somebody to go tell them, look, we got an out here, I found a loophole to get you off. And, you know, at that point sometimes the relationship goes sour.
We conclude that the postconviction court did not err in denying this claim.
The Sixth Amendment right to the assistance of counsel does not “guarantee[] a ‘meaningful relationship’ between an accused and his counsel.” Morris v. Slappy, 461 U.S. 1, 14, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983). Under Strickland, an ineffective assistance claim must be based on the quality of counsel’s performance— not on the quality of counsel’s relationship with the defendant. Strickland requires that “the defendant must ... specify an act or omission of counsel ‘so serious that counsel was not functioning as the “counsel” guaranteed by the Sixth Amendment.’ ” Ey v. State, 982 So.2d 618, 621 (Fla.2008) (quoting Strickland, 466 U.S. at 687, 104 S.Ct. 2052). Because Everett has failed to show specifically how his relationship with attorney Smith caused any deficient performance on the part of attorney Smith, Everett’s claim is legally insufficient. See id.
b. Pretrial Suppression Hearing
i. Calling Everett to Testify
First, Everett claims that attorney Smith was ineffective for failing to call Everett to testify at the suppression hearing about the statements he made in Alabama, allegedly in violation of his rights under Miranda, 384 U.S. 436, 86 S.Ct. 1602. At the postconviction evidentiary hearing, attorney Smith testified that he did not call Everett to testify at the pretrial suppression hearing because “everyone pretty much agreed as to what happened” and “if there were some important revelation that [he] thought would have bearing on that motion to suppress [he] would have put [Everett] on [the stand].” At the postconviction evidentiary hearing, *474 Everett testified that while still in Alabama custody, he made statements to Detective John Murphy—an investigator with the Baldwin County Sheriffs Office—in between Everett’s statements to Sergeant Rodney Tilley, which were never presented to the trial court or jury.
The postconviction court determined that attorney Smith was not ineffective. It found that Everett’s “version of what took place [was] not credible” and that nothing established that if Everett had testified at the suppression hearing, the trial court would have reached a different result. We agree that Everett did not establish that counsel was ineffective.
This Court has consistently held that a “trial counsel’s ‘strategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel’s decision was reasonable under the norms of professional conduct.’ ” Anderson v. State, 18 So.3d 501, 509 (Fla.2009) (quoting Occhicone v. State, 768 So.2d 1037, 1048 (Fla.2000)). Here, attorney' Smith noted that there was nothing else to add at the suppression hearing, that the salient facts were basically undisputed, and that if he had needed the testimony he certainly would have asked Everett to testify.
This Court has also consistently held that a trial counsel’s decision to not call certain witnesses to testify at trial can be reasonable trial strategy. See Bowles v. State, 979 So.2d 182, 188 (Fla.2008) (holding that counsel’s failure to call clinical psychologist to provide emotional disturbance mitigation was reasonable trial strategy); Arbelaez v. State, 898 So.2d 25, 39 (Fla.2005) (holding that trial counsel’s failure to call defendant’s family members as witnesses during penalty phase was reasonable trial strategy and not ineffective assistance of counsel). Attorney Smith testified at the postconviction evidentiary hearing that he would have called Everett to testify if it would have added something to the defense’s argument. Based on that testimony and this Court’s precedent, attorney Smith’s decision to not call Everett to testify was a reasonable strategic decision. Moreover, this Court has held that such strategic decisions may be based on counsel’s concern about credibility. See Hutchinson v. State, 17 So.3d 696, 702 (Fla.2009) (“It is not deficient performance to make a strategic decision for the purpose of retaining credibility....”). Therefore, to the extent that attorney Smith’s decision to not call Everett to testify was based on concern about Everett’s credibility, such decision was not deficient.
Everett has also failed to prove Strickland prejudice. The postconviction court found that Everett’s postconviction testimony about the events between Everett and Lieutenant Murphy was not credible. Because the postconviction court made such a credibility determination, we defer to the postconviction court’s finding that the trial court likely would have found Everett not credible during the suppression hearing, so long as the postconviction court’s findings were supported by competent, substantial evidence. See Hutchinson, 17 So.3d at 700. The postconviction record indicates that Everett’s statements regarding other issues during the proceedings were not credible, particularly those statements regarding the events surrounding the crimes. For example, at the post-conviction evidentiary hearing, attorney Smith indicated that “by the time this case went to trial I didn’t really know what he would say if he were called to testify because he had come up with all sorts of versions, you know, during the interim from the arrest to the trial.” Attorney Smith stated that one of Everett’s versions included that “the victim was some sort of a double agent and was involved in drugs *475 and they had gone to Alabama and she was in Alabama.” Moreover, attorney Smith testified that at some point Everett had
sort of reverted back to the second version. I mean, the third version was where he, quote, came clean, end quote, and said, yeah, I did it and this is what happened. But the second version was the one about Bubba and other people being involved and that’s sort of the version that he adopted, you know, during the process between arrest and trial.
Everett’s inconsistent stories about the events surrounding his crimes and attorney Smith’s testimony about Everett’s lack of credibility support the postconviction court’s determination that Everett’s version of the events between him and Lieutenant Murphy was also not credible,
ii. Calling Lieutenant Murphy to Testify
Second, Everett argues that attorney Smith was ineffective for failing to call Lieutenant Murphy to testify at the suppression hearing. Everett argues that Lieutenant Murphy would have testified that there were improper communications between Lieutenant Murphy and Everett that were not presented to the trial court. At the postconviction evidentiary hearing, attorney Smith acknowledged that Lieutenant Murphy was a material witness as to Everett’s pretrial statements and that he had been unable to obtain Murphy as a witness. At the postconviction evidentiary hearing, Lieutenant Murphy testified that he did not have additional contact or conversations with Everett, that he never threatened Everett, and that he never told Everett that Everett could avoid the death penalty by confessing to the murder and talking to the Panama City police. The postconviction court determined that Lieutenant Murphy’s testimony was credible and that Everett’s version of the events was not credible. The postconviction court ultimately determined that attorney Smith was not ineffective. We agree.
Everett has failed to show that attorney Smith’s failure to call Lieutenant Murphy to testify at the suppression hearing constituted deficient performance or resulted in any prejudice. Despite Everett’s allegation that Murphy would have provided favorable testimony, at the evidentiary hearing Murphy instead denied having additional or hidden interviews with Everett and stated that all communications with Everett were covered in the report used at the suppression hearing. Because Lieutenant Murphy’s testimony would not have been favorable, Everett could not possibly have been prejudiced by attorney Smith’s failure to secure that testimony.
c. Forensic Evidence
Charles Richards, an employee of the Florida Department of Law Enforcement (FDLE), testified during the guilt phase on behalf of the State about the crime scene (the victim’s home), particularly about blood spatter. Everett argues that attorney Smith was ineffective by failing to sufficiently object to Richards’ testimony. Everett admits that attorney Smith did object but argues that attorney Smith should have objected again. It is not clear whether Everett argues that attorney Smith was ineffective for failing to make a second objection asserting that Richards was not qualified to testify as an expert or for failing to object on the ground that Richards testified beyond the scope of his qualifications as a crime scene analyst.
The following exchange occurred when Richards was initially questioned on direct examination, wherein attorney Smith objected to Richards testifying as an expert:
Q. Now can you tell us anything when you are looking at blood spatter *476 from a crime scene technician’s perspective that it tells you regarding directionality in which the blood drop would have come?
MR. SMITH: Judge, if I can be heard.
THE COURT: If counsel will approach side-bar,
(Side-bar conference:)
MR. SMITH: Chuck had not been qualified as an expert. I don’t know if you are going to try to qualify him as a blood expert or crime scene — I don’t really think he’s a blood spatter expert.
MR. MEADOWS: We won’t have Chuck make opinions about recreating about this blood was struck here and that blood struck there, that’s not the purpose of what we are offering, but within his training and crime scene processing, part of the training they have is being able to determine direction in which blood was deposited by direction of the tail.
MR. SMITH: That’s as far as you are going?
MR. MEADOWS: And contact, that appears to be a contact, but that’s the extent, so I have not tendered him as an expert and—
MR. SMITH: Well, if he’s just going to say this, you know, this is it, came from this direction....
[[Image here]]
(Side-bar conference concluded.)
At the postconviction evidentiary hearing, Richards testified that he was competent to opine about such blood spatter patterns based on his training as a crime scene analyst, and attorney Smith testified that he did not make an additional objection because it was not necessary for Richards to be an expert to testify as he did. Ultimately, the postconviction court determined that Everett failed to show that attorney Smith was deficient. We agree.
To the extent that Everett claims that attorney Smith was deficient for not making a subsequent objection about Richards’ qualifications, such argument is without merit. At the time of Everett’s trial in 2002, Florida district courts had held that a party was not required to reassert his objection after it had been overruled. See, e.g., Howard v. State, 616 So.2d 484, 485 (Fla. 1st DCA 1993) (holding that where defendant sought to exclude evidence prior to trial and again just prior to witness’s testimony at issue, it was not necessary for defendant to object to testimony when it was actually put before jury); Thomas v. State, 599 So.2d 158, 159-60 n. 1 (Fla. 1st DCA 1992) (holding that where an objection was made and trial court’s ruling was treated as conclusive by state and defense counsel, there was no need for further objections when evidence was presented to jury); Webb v. Priest, 413 So.2d 43, 46 (Fla. 3d DCA 1982) (“We will not require Webb to renew his objection each time in what would have been an obviously futile gesture.”). We agree with the district courts. Attorney Smith was not required to reobject to Richards’ qualifications when Richards presented his testimony to the jury.
To the extent that Everett claims that attorney Smith was deficient for failing to object on grounds that Richards’ testimony exceeded the bounds of his crime scene analyst qualifications, such argument is likewise without merit. Crime scene analysts have testified about blood spatter in similar cases. For example, in Buzia v. State, 926 So.2d 1203, 1212 (Fla.2006), this Court stated:
A crime scene analyst concluded that the blood spatter on the wall near Mr. Kersch’s body was the “result of a beating.” Based on those blood stains and *477 patterns, she also concluded that there were at least two separate swings of the ax and two separate impacts to Mr. Kersch’s head.
Similai'ly, in Brooks v. State, 918 So.2d 181, 196 n. 13 (Fla.2005), the crime scene analyst concluded, based upon “medium-velocity blood spatter and arterial spurting on the front passenger’s door panel” combined with other evidence in the car, that the victim was behind the steering wheel when the attack began.
Richards’ testimony was similar in scope. At trial, Richards testified in nontechnical terms about different blood spots around the victim’s home. He testified as to how, based on the shape of the spots, the blood hit surfaces such as the walls in the home. Given Richards’ testimony and testimony of crime scene analysts regarding blood spatter in similar cases, Everett has not established that Richards’ testimony exceeded the bounds of his qualifications as a crime scene analyst. Since Richards did not exceed the scope of his qualifications as a crime scene analyst, attorney Smith could not have been deficient for failing to make an additional objection that Richards was testifying beyond his qualifications.
Everett also has failed to show Strickland prejudice. Everett failed to present any evidence that Richards was unqualified, that the stains were not the victim’s blood stains, or that Richards testified incorrectly. Everett has not explained how objecting to Richards’ testimony would have improved his defense or undermined the State’s presentation. Because Everett did not present any evidence that Richards’ testimony was improperly inculpating, Everett’s claim is insufficient. See State v. Larzelere, 979 So.2d 195, 211 (Fla.2008) (holding that where Larzelere claimed that trial counsel was ineffective for failing to call a concrete expert, defendant failed to prove prejudice because she failed to show what a concrete expert would have testified to or how testimony would have “cast doubt on her guilt”).
The extensive evidence presented at trial concerning blood in the victim’s home makes it clear that the exclusion of this testimony by Richards would have had no impact on Everett’s trial. At trial, medical examiner Dr. Marie Hansen, who observed the murder scene, testified that there was a bloody pillow near the victim, that there was blood spatter on the ceiling, and that there were blood droplets on the furniture. Dr. Hansen also pointed out to the jury through photographs that there was blood on the victim’s hand and forearm and on the bottoms of the victim’s feet. Similarly, Sergeant Tilley testified at trial that there was blood in various areas of the victim’s home. Most compelling is Everett’s own confession to beating the victim, that she was bleeding, that he somehow got blood, on his shoes, and that he “guess[ed]” his clothes got blood on them. At trial, the jury was also able to view the crime scene and view the blood through a videotape and photographs.
d. Presentation of the Lead Police Detective
Everett argues that attorney Smith was ineffective by presenting Sergeant Tilley as the sole defense witness because Tilley was the chief witness for the State. At the postconviction evidentia-ry hearing, when questioned about his purpose for presenting Sergeant Tilley as a defense witness, attorney Smith testified that he called Tilley because Everett had told Tilley about his drug use and Tilley’s testimony was the only way attorney Smith could get the drug use into evidence. The postconviction court concluded that Everett’s claim was meritless and stated that attorney Smith’s strategy was *478 reasonable under the norms of professional conduct. Attorney Smith had contemplated alternative courses but determined that it was best to focus on the admissibility of Everett’s statements since that was the key to the State’s case. We conclude that the postconviction court did not err.
“[S]trategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel’s decision was reasonable under the norms of professional conduct.” Anderson, 18 So.3d at 509 (quoting Occhicone, 768 So.2d at 1048). The defendant carries the burden to “overcome the presumption that, under the circumstances, the challenged action ‘might be considered sound trial strategy.’ ” Strickland, 466 U.S. at 689, 104 S.Ct. 2052 (quoting Michel v. Louisiana, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)). Moreover, this Court has held, “That there may have been more that trial counsel could have done or that new counsel in reviewing the record with hindsight would handle the case differently, does not mean that trial counsel’s performance during the guilt phase was deficient.” State v. Coney, 845 So.2d 120, 136 (Fla.2003) (quoting trial court’s order (citing Cherry, 659 So.2d 1069)).
It is clear from the record that attorney Smith had a legitimate guilt-phase purpose in eliciting such testimony — to undermine the State’s claim that the crime was premeditated. In particular, attorney Smith seemingly intended to plant doubt in the jury’s mind regarding Everett’s involvement in the crimes, mental state during the crimes, and confessions to the crimes. Through Tilley’s testimony, attorney Smith highlighted that Everett said he had been using LSD and had been “tripping out.” This enabled attorney Smith to show that Everett’s confession was not consistent with some other trial evidence. For example, Sergeant Tilley testified that he was unaware of any evidence showing that anal penetration had been made to the victim and that the lights at the victim’s home were on. This was contrary to Everett’s confession to Tilley, in which Everett stated that there was both vaginal and anal penetration to the victim and that the lights at the victim’s home were off. In a seeming attempt to show Everett’s mental state, attorney Smith also elicited from Tilley that Everett left his shirt but grabbed the victim’s sweater; that Tilley believed Everett even stated that he wore the sweater for a brief time; that Everett abandoned both the victim’s sweater and credit card; and that Everett did not use the victim’s credit card. During his closing argument, attorney Smith argued that Everett’s statements to police officers were unreliable because while “truthful” they were “not totally accurate” and that there was “no[ ] evidence of premeditation.” Attorney Smith concluded, “In sum, what this case is simply a bungled burglary committed by somebody who was high, committed by somebody who committed acts which are inexcusable but that don’t amount to the main charges that have been asserted by the State.”
Given the evidence against Everett, attorney Smith’s decision to call Sergeant Tilley to testify about Everett’s drug use was proper in order to plan ahead for Everett’s penalty phase, as it was clear to attorney Smith that the State would seek the death penalty. Counsel’s conduct was not deficient. See Henry v. State, 948 So.2d 609, 617-18 (Fla.2006) (rejecting ineffective assistance of counsel claim where defense counsel “ma[de] the decision — well before trial and with Henry’s informed consent — to question Henry about [a previous] murder, the sentence he served for this crime, and the death sentence he received for [another previous] murder,” and *479 noting that “[w]hile this testimony would not otherwise have been admissible if it had not been raised by the defendant on direct examination, we recognize that the facts of this case would lead reasonably prudent defense counsel to believe there was a strong likelihood Henry would be convicted in the guilt phase and, therefore, that counsel would need to consider the impact of the guilt phase on the penalty phase”); Shere v. State, 742 So.2d 215, 219-20 (Fla.1999) (rejecting ineffective assistance of counsel claim where defense counsel made strategic decision to offer evidence of a codefendant’s admission during the guilt phase, and noting that “[a]t the conclusion of the State’s case, the defendant was in a desperate situation” because “[t]he State’s case-in-chief did not leave any doubt that the defendant played a major role in the murder”).
Additionally, Everett has failed to show Strickland prejudice. Everett argues that Sergeant Tilley’s testimony was harmful and that by calling Sergeant Tilley as a defense witness, attorney Smith caused Everett to lose the summation-argument advantage and that having the final closing argument “would have had a substantial likelihood of producing a new result of the trial.” Everett does not explain which parts of Tilley’s testimony were harmful or what counsel could have argued in the final closing argument that would have swayed the jury. We have evaluated Tilley’s testimony and any alleged prejudice that came from calling Detective Tilley. We conclude that calling Tilley and not being able to have the final closing argument in no way undermines confidence in the outcome of Everett’s guilt phase, especially in light of the substantial evidence of guilt that includes Everett’s own confession and the DNA evidence. See Everett, 893 So.2d at 1287.
2. Penalty-Phase Claims of Ineffective Assistance of Counsel
a. Reliance on Everett’s Father for Mitigation
Everett argues that attorney Smith was ineffective by relying on Everett’s alcoholic father to find mitigation and for failing to look elsewhere for mitigation after Everett’s father’s death. The post-conviction court determined that attorney Smith had adequately investigated potential mitigation, had interviewed potential witnesses other than Everett’s father, and simply “ran into a dead end.” We agree.
Everett has failed to show that attorney Smith performed deficiently. We find that competent, substantial evidence supports the postconviction court’s finding that counsel investigated potential mitigation and did not solely rely upon Everett’s father, and thus we defer to the postconviction court on this finding. See Hutchinson, 17 So.3d at 700. Attorney Smith traveled to Alabama in search of additional mitigating evidence. While there, he interviewed Everett’s former principal and guidance counselor, but neither offered any viable mitigation evidence. Moreover, even the most promising mitigation witnesses — Everett’s mother, Glenda Everett, and sister, Cindy Everett Griden — whom attorney Smith did present as witnesses during the penalty phase, offered little mitigation. Rather, they testified that they loved Everett and that Everett was not violent and gave details about Everett’s upbringing. Attorney Smith also had Dr. Jill Rowan examine Everett for competency, but her examination proved unfavorable.
In Hildwin v. Dugger, 654 So.2d 107, 109 (Fla.1995), this Court held that Hild-win demonstrated both Strickland deficiency and prejudice where trial counsel “failed to unearth a large amount of mitigating evidence which could have been *480 presented at sentencing.” The Court emphasized that at his postconviction eviden-tiary hearing, the defendant “presented an abundance of mitigating evidence which his trial counsel could have presented at sentencing.” Id. at 110. Hildwin presented two mental health experts who testified that two statutory mitigating circumstances existed:. (1) Hildwin committed the murder under influence of extreme mental or emotional disturbance; and (2) Hild-win’s capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired. Both experts also testified that they recognized several nonstatutory miti-gators. Id.
Similarly, in Phillips v. State, 608 So.2d 778, 782 (Fla.1992), the Court determined that Phillips demonstrated both Strickland deficiency and prejudice where trial counsel admitted to doing “virtually no preparation for the penalty phase.” The only testimony presented as mitigation was Phillips’ mother’s testimony that Phillips was a good son. During postconviction proceedings, Phillips produced much mitigating evidence through testimony of relatives, friends, and experts. The experts opined that “Phillips [was] emotionally, intellectually, and socially deficient, that he [had] lifelong deficits in his adaptive functioning, that he [was] withdrawn and socially isolated, that he [had] a schizoid personality, and that he [was] passive-aggressive.” Id. at 782-83. Both experts concluded that Phillips was within the statutory mitigating circumstances of extreme emotional disturbance and inability to conform his conduct to the requirements of the law. Id. at 783. Their opinions were that Phillips did not have the requisite intent for either the cold, calculated, and premeditated or heinous, atrocious, or cruel aggravating circumstances, id., which the trial court had found, see Phillips v. State, 476 So.2d 194, 196 (Fla.1985).
This case is distinguishable from both Hildwin and Phillips. In both Hildwin and Phillips, trial counsel made severe errors in failing to investigate and find compelling mitigating evidence. The evidence that they failed to discover and present would have supported additional mitigating circumstances and, at least in Phillips, might have prevented the application of serious statutory aggravating circumstances. In this case, attorney Smith extensively searched for mitigating evidence, but he was simply unable to find mitigation beyond the testimonies of Everett’s mother and sister. Also unlike Hild-win and Phillips, at the postconviction evi-dentiary hearing, Everett presented little evidence that attorney Smith had not presented at trial. Although Everett did present an expert, Dr. Umesh Mhatre, who opined that Everett’s drug use made him paranoid and that such paranoia was likely a factor in his violent behavior on the date of the crime, even Dr. Mhatre stated that his opinion was based solely on Everett’s statements and did not opine that the paranoia rose to the level of statutory mental health mitigation.
To establish prejudice, Everett has the burden of showing that counsel’s ineffectiveness “deprived [him] of a reliable penalty phase proceeding.” Davis v. State, 990 So.2d 459, 471 (Fla.2008) (alteration in original) (quoting Asay v. State, 769 So.2d 974, 985 (Fla.2000)); see also Rutherford v. State, 727 So.2d 216, 223 (Fla.1998). Everett did not do so. See Davis, 990 So.2d at 471 (holding that where much of evidence Davis alleged should have been presented was, in fact, presented during penalty phase, Davis had not shown that counsel’s ineffectiveness deprived him of reliable penalty phase).
b. No Male Role Model and an Unstable Upbringing
Everett argues that attorney Smith was ineffective for failing to present *481 mitigation evidence that Everett had no viable male role model other than his alcoholic father and had an unstable upbringing from being moved from place to place. The postconviction court did not make particular findings about these facts. Rather, the postconviction concluded that mitigation witnesses had in fact presented an account of Everett’s background.
The evidence presented during both the penalty phase and the postconviction evi-dentiary hearing showed that Everett’s father was an alcoholic and acted inappropriately toward Everett at times; that Everett loved his father; and that Everett moved several times as a result of his parents’ divorce, remarriage, and second divorce. This Court has held that where the evidence presented at the postconviction evidentiary hearing was “essentially cumulative” to that presented during the penalty phase, trial counsel cannot be considered deficient. Rutherford, 727 So.2d at 224-25; Darling v. State, 966 So.2d 366, 378 (Fla.2007) (“[T]rial counsel is not ineffective for failing to present cumulative evidence.”). Because the evidence presented at the postconviction evidentia-ry hearing was substantially cumulative to that presented during the penalty phase, Everett has failed to show either deficiency or prejudice under Strickland. See Davis, 990 So.2d at 471; Rutherford, 727 So.2d at 226.
c. Consulting with a Psychological or Psychiatric Professional
Everett argues that attorney Smith was ineffective for failing to consult with a psychological or psychiatric professional for the purpose of discovering and developing mitigating circumstances. At the evidentiary hearing, Everett presented Dr. Umesh Mhatre, a psychiatrist, who explained the effects of Everett’s alleged drug use on his behavior during the time of the crimes. Dr. Mhatre testified in pertinent part:
Yes, I talked to [Everett] at length and he has had problems with drinking since he was eight years old, actually his father often gave him the beer and got him started. He was drinking up to 12 to 18 beers a day and would go months without drinking. He also started drinking hard liquor which he found very difficult to handle. At 12 years he started abusing marijuana which is given to him by his sister’s boyfriend. He subsequently started using LSD, powder cocaine, crack cocaine and then started doing crystal meth after that and actually became pretty good at cooking it himself. He was then selling drugs and using them and this became pretty much part of his life. He had also used Ecstasy and pain pills. And he had used crystal meth, cocaine and LSD intermittently.
[[Image here]]
On the day of the alleged offense actually [Everett] claims he had used about half an ounce of methamphetamine in a week leading to his arrest, five ounces of marijuana, about one gram of powder cocaine, a gram of crack cocaine and had drank two six-packs of beer every day and he had done about six to seven hits of LSD in a week prior to his arrest and he basically said that he was so high on drugs he had not slept almost in seven days.
[[Image here]]
... [I]t seems like he was getting increasingly paranoid and when the victim accidentally got into the room looking for somebody, the paranoia just went off the roof, he started thinking she was a law enforcement, trying to get her, trying to track her down, ran into her unfortunately later on while she was jogging, followed her and stalked her and *482 were convinced, and if you notice her initial purpose to go there was to find out who her personal [sic], if she does, in fact, belong to law enforcement. So a lot of paranoia, it was very obvious at the time.
Dr. Mhatre also stated that his opinion was based solely on what Everett told him.
The postconviction court did not find Dr. Mhatre’s testimony compelling. The post-conviction court emphasized that Dr. Mha-tre acknowledged that he was unable to corroborate that Everett “was in a drug induced psychosis at the time of the murder.” The postconviction court determined that attorney Smith was not ineffective. We agree.
Everett’s argument-that attorney Smith was deficient for failing to consult with a psychological or psychiatric professional is factually incorrect. At attorney Smith’s request, Dr. Jill Rowan examined Everett for competency, but attorney Smith chose not to introduce Dr. Rowan as a mitigation expert because Dr. Rowan’s examination proved unhelpful to Everett’s case. Dr. Rowan opined that “Everett demonstrated no signs of mental retardation or of a major mental illness” and that nothing indicated that a full competence evaluation should be done.
To the extent that Everett asserts that attorney Smith was ineffective for not calling Dr. Rowan as an expert, such an argument is meritless. Attorney Smith’s decision to not call Dr. Rowan as a mitigation witness was not deficient since her testimony was not favorable to Everett’s case. See, e.g., Winkles v. State, 21 So.3d 19, 25 (Fla.2009) (finding counsel made reasonable decision to not call any of the three mental health experts consulted because testimony would not have been helpful to defense’s case); Bowles, 979 So.2d at 188 (finding that counsel made reasonable strategic decision not to call mental health expert as witness where expert would have testified that defendant was only mildly impaired, impulsive, and dangerous).
Everett has failed to show that he was prejudiced by attorney Smith’s failure to call a mental health expert for penalty-phase mitigation. In determining whether Everett was prejudiced, it is necessary to determine whether additional evidence of Everett’s substance abuse and paranoia would undermine confidence in his sentence in light of the aggravation and mitigation present in Everett’s case. In Everett’s case, the evidence in the record indicates that the mitigating evidence presented during the postconviction evi-dentiary hearing would not alter the balance of aggravation and mitigation.
The sentencing court found as aggravating circumstances that Everett was a convicted felon under a sentence of imprisonment at the time of the murder; Everett committed the murder while engaged in the commission of a sexual battery or a burglary; and the murder was especially heinous, atrocious, or cruel. The sentencing court also found five statutory mitigating circumstances and four nonstatutory mitigating circumstances, giving little or very little weight to each. Most important to Everett’s argument is that the sentencing court determined that the statutory mitigating circumstance “under the influence of extreme mental or emotional disturbance” was not established. However, the sentencing court determined that
because [Everett] did say he took “acid” before the crimes were committed and there is no evidence that [Everett] did not use some type of substance before committing this murder, the Court will consider this as a mitigating circumstance by removing the words “extreme mental or emotional disturbance” and adding the word “substance.”
*483 The sentencing court assigned little weight to this circumstance.
Everett argues that evidence of his drug use could have supported the conclusion that Everett was suffering from emotional distress, such as fear or anxiety. Because Dr. Mhatre’s testimony focused on the mental effects of Everett’s alleged drug use, the testimony was seemingly targeted at establishing the “under the influence of extreme mental or emotional disturbance” statutory mitigator, which the sentencing court rejected. However, to the extent that Dr. Mhatre’s testimony supports a theory that Everett committed the crimes while under a drug-induced paranoia, such a theory is undermined by the facts in Everett’s case.
This Court addressed similar claims in Owen v. State, 986 So.2d 584 (Fla.2008), and Foster v. State, 929 So.2d 524 (Fla.2006). In Owen, this Court determined that because there were substantial aggravating and mitigating circumstances, post-conviction expert testimony that Owen’s substance abuse “would certainly exacerbate” the impulse-control problems caused by his neuropsychological impairment did not provide a basis for establishing prejudice. Owen v. State, 986 So.2d at 552. The Court emphasized,
Given the deliberate manner in which Owen twice entered the home in which [the victim] was babysitting before attacking her, it seems unlikely that [the expert’s] testimony about how Owen’s substance abuse would have exacerbated his impulsivity would change the trial judge or jury’s evaluation of Owen’s mitigation.
Id. at 553. This Court ultimately held that confidence in the death sentence was not undermined by counsel’s failure to present Owen’s history of substance abuse.
Similarly, albeit pertaining to guilt-phase evidence, in Foster v. State, this Court held that Foster had failed to prove that he was prejudiced by counsel’s failure to present an involuntary intoxication defense. The Court held that “there was ... substantial evidence presented to the jury which invalidated this defense, including the fact that Foster had a clear recollection of the details of the offense and that the offense involved deliberate behavior.” 929 So.2d at 531.
Like Owen and Foster, Everett acted in a deliberate manner. As the sentencing court correctly emphasized, “regardless of his use of any substance, [Everett] was able to go to the victim’s home, enter, burglarize her home, commit a sexual battery upon her, [and] murder her.” Moreover, as this Court emphasized in Foster, Everett was able to clearly recollect the events surrounding the crimes. Based on the factual circumstances of the crimes which Everett clearly recollected, the aggravation and mitigation found by the sentencing court, and this Court’s precedent, the additional evidence of Everett’s substance abuse and paranoia presented at the postconviction evidentiary hearing does not undermine confidence in his sentence. See Owen, 986 So.2d at 551-52.
d. Everett’s Drug Use
Everett also argues that attorney Smith was ineffective for failing to introduce more evidence of Everett’s drug use during the penalty phase. During the penalty phase, Everett’s mother and sister testified that Everett had been using drugs and that Everett was a loving, nonviolent person. At the postconviction evi-dentiary hearing, Everett’s mother and two of Everett’s sisters testified. Everett’s mother testified that she was unable to tell when Everett was on drugs, and one sister stated that she never saw Everett act violently during the time period that she thought he was using drugs. Dr. Mhatre testified at the postconviction *484 hearing about Everett’s paranoia as a result of Everett’s drug use. Everett testified at the postconviction evidentiary hearing that he was never violent as a result of using drugs, and the following exchange occurred:
Q Do you recall any unique effects that cocaine and methamphetamine together would have on you?
A [Everett] Intense paranoia where I was always either looking out of the window, thinking I was being watched by the police or if I was going down the road always thought the police were following me. And it was just an intense paranoia of the police, of the law enforcement.
Q Would that ever prompt you to consider or maybe even execute violent acts?
A No, not, I mean, I really, I really can’t say, when it gets to that point it’s self-preservation not wanting to go to jail and then, so I can’t say no.
Q Did you ever have a discussion with Mr, Smith about that?
A No.
Q Did you ever have a discussion with [Dr.] Rowan about that?
A No.
Q Was any evidence of this presented at your trial?
A Not at all.
Q Is there any question in your mind as to whether you were using these substances in Panama City at that time?
A No.
Q Were you or were you not?
A Oh, I was, yes.
Q And within the hours before this incident occurred had you used both of those?
A Yes.
The postconviction court noted that attorney Smith indeed had presented testimony about Everett’s drug use during the penalty phase. The postconviction court emphasized that Everett’s accusation that attorney Smith did not properly investigate Everett’s drug use was not' credible:
[Everett] testified at the evidentiary hearing that he never told his attorney about the effects of certain drugs on him and that he was never violent when he was on drugs growing up. According to [Everett], Mr. Smith never asked him about any problems with drugs and Mr. Smith never told [Everett] about drugs [sic]. However, Mr. Smith testified the defendant told him about cooking meth and using drugs in the past. Furthermore, [Everett] indicated in his statements he was high on LSD or something at the time this occurred. In light of the trial record indicating the constant references to drug use by [Everett], the Court finds [Everett’s] claim that Mr. Smith did not adequately investigate his drug usage not credible. As noted previously, Mr. Smith utilized [Everett’s] purported drug use in an effort to avoid not only conviction of premeditated murder but also to avoid the death penalty.
(Citation omitted.) We agree. The post-conviction record supports these findings, and thus there is competent, substantial evidence to support the postconviction court’s credibility determination. Accordingly, we defer to the trial court. See Hutchinson, 17 So.3d at 700.
Moreover, while the evidence presented at the postconviction evidentiary hearing regarding Everett’s drug use may have provided more detail, particularly because of Dr. Mhatre’s testimony about Everett’s drug use and resulting paranoia, as the postconviction court noted, the testimony of Everett’s mother and two sisters at the postconviction evidentiary hearing was *485 substantially cumulative to the evidence presented to the jury during the penalty phase. Accordingly, attorney Smith was not deficient for failing to present such evidence at trial. See Rutherford, 727 So.2d at 224-25; Owen, 986 So.2d at 546; Darling, 966 So.2d at 378; Woods v. State, 531 So.2d 79, 82 (Fla.1988) (“[T]he testimony now advanced, while possibly more detailed than that presented at sentencing, is, essentially, just cumulative to the prior testimony. More is not necessarily better.”).
Everett has failed to present evidence substantially different from the evidence that attorney Smith presented during Everett’s penalty phase. Therefore, Everett has failed to meet his burden of showing that counsel’s ineffectiveness “deprived [him] of a reliable penalty proceeding.” Davis, 990 So.2d at 471 (quoting Asay v. State, 769 So.2d 974, 985 (Fla.2000)); see also Rutherford, 727 So.2d at 226. Accordingly, the additional testimony presented at the postconvietion evidentiary hearing did not undermine confidence in the trial.
B. Other Claims
“To uphold the trial court’s summary denial of claims raised in an initial postconviction motion, the record must conclusively demonstrate that the defendant is not entitled to relief.” Hutchinson, 17 So.3d at 700 (citing Foster v. State, 810 So.2d 910, 914 (Fla.2002)). “Where no evidentiary hearing is held below, we must accept the defendant’s factual allegations to the extent that they are not refuted by the record.” Id. at 700-01 (citing Lightbourne v. Dugger, 549 So.2d 1364, 1365 (Fla.1989)).
1. Cumulative Error
Everett argues that the cumulative effect of the errors in the guilt and penalty phases warrants relief. We disagree. This Court found no reversible error on direct appeal, see Everett, 893 So.2d at 1288, and Everett has not demonstrated in this proceeding that any additional error occurred that was not considered on direct appeal. Thus, he is not entitled to relief on the basis of cumulative error. See, e.g., Owen, 986 So.2d at 556-57 (denying cumulative error claim because defendant did not show that any harmful error occurred).
2. Florida’s Death Penalty Laws and Procedures
Everett argues that in light of Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), Florida’s death penalty procedures are unconstitutional. First, Everett argues that his constitutional rights were denied because the jury was not instructed that it was required to find at least one aggravating circumstance unanimously and beyond a reasonable doubt. This Court rejected this claim on direct appeal, see Everett, 893 So.2d at 1282, and thus this claim is procedurally barred, see, e.g., Green v. State, 975 So.2d 1090, 1106 (Fla.2008) (“Because the dog tracking issue was raised on direct appeal, Green is not permitted to relitigate it on postconviction appeal.”).
Second, Everett argues that his constitutional rights were denied because the jury was improperly instructed that its penalty-phase verdict was only advisory, which failed to adequately apprise the jury of the importance of its decision. The Court also rejected this argument on direct appeal, see Everett, 893 So.2d at 1282, and thus it is procedurally barred, see, e.g., Green, 975 So.2d at 1106.
Third, Everett argues that his constitutional rights were denied because the jury *486 should have been instructed that a life sentence for a conviction of a capital offense does not include the possibility of release on parole. Everett’s argument is factually incorrect and is thus without merit. During the penalty phase, the jury was instructed, “If you find the aggravating circumstances do not justify the death penalty, your advisory sentence should be one of life imprisonment without the possibility of parole.”
3. Lethal Injection Claims
Everett claims that the use of lethal injection as a method of carrying out the death penalty is cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution. Everett bases this claim on the botched execution of Angel Diaz and the 2007 Report of the Governor’s Commission on the Administration of Lethal Injection in Florida, both of which arose several years after Everett’s convictions. The postconviction court did not err in denying Everett’s claim without an evidentiary hearing, as this Court has repeatedly rejected similar lethal injection arguments. See, e.g., Tompkins v. State, 994 So.2d 1072, 1081 (Fla.2008), cert. denied, — U.S. -, 129 S.Ct. 1305, - L.Ed.2d - (2009); Power v. State, 992 So.2d 218, 220-21 (Fla.2008); Sexton v. State, 997 So.2d 1073, 1089 (Fla.2008). Additionally, this Court has held the procedures constitutional under the requirements of Baze v. Rees, 553 U.S. 35, 128 S.Ct. 1520, 170 L.Ed.2d 420 (2008). See Ventura v. State, 2 So.3d 194, 200 (Fla.) (“Florida’s current lethal-injection protocol passes muster under any of the risk-based standards considered by the Baze Court (and would also easily satisfy the intent-based standard advocated by Justices Thomas and Scalia).”) cert. denied, — U.S.-, 129 S.Ct. 2839, 174 L.Ed.2d 562 (2009); Henyard v. State, 992 So.2d 120, 130 (Fla.), cert. denied, — U.S. -, 129 S.Ct. 28, 171 L.Ed.2d 930 (2008).
III. PETITION FOR WRIT OF HABEAS CORPUS
Everett raises seven claims in his petition for a writ of habeas corpus. He claims that (A) Everett was denied his Sixth Amendment right to counsel when law enforcement officers initiated contact with Everett before Everett’s confession; (B) Everett is denied due process if his conviction is allowed to stand based on inherently unreliable forensic evidence; (C) Everett is entitled to now introduce the deposition of Lieutenant Chad Lindsey; (D) the death penalty as applied in Florida is unconstitutional; (E) lethal injection as practiced in Florida is cruel and unusual punishment; (F) the cumulative effect of all errors requires relief; and (G) Everett should be entitled to raise any new issue which could have been discovered but that was not discovered based on good-faith omission or neglect.
A. Right to Counsel
Everett argues that while he was incarcerated in Alabama, he was subject to questioning by Florida law enforcement officers but was without access to Florida legal assistance. Based on this, Everett asserts that he was denied his Sixth Amendment right to counsel. This claim is procedurally barred because Everett raised the trial court’s rejection of his motion to suppress on direct appeal. See Everett, 893 So.2d at 1282; Breedlove v. Singletary, 595 So.2d 8, 10 (Fla.1992) (“Habeas corpus is not a second appeal and cannot be used to litigate or relitigate issues which could have been, should have been, or were raised on direct appeal.”).
B. Forensic Evidence
Everett argues that this Court should not allow his conviction to stand *487 because it is based on an incompetent analysis of forensic evidence which was presented to the jury without adequate basis, safeguard, or challenge. While Everett’s claim is not particularly clear, it appears to be based on the testimony of Charles Richards, who Everett asserted in his postcon-viction motion was not qualified to testify at trial about blood spatter. Because Everett challenged Richards’ qualifications within an ineffective assistance of counsel claim in his motion for postconviction relief, this claim is procedurally barred. See Hildwin, 654 So.2d at 111.
C.Deposition of Lieutenant Lindsey
Everett argues that he should now be able to introduce Lieutenant Chad Lindsey’s deposition. Everett claims that this deposition was not previously available to Everett and was not discovered by appellate counsel in materials furnished from attorney Smith and that the docket of the court file does not reveal that this deposition had been filed. Everett claims that the deposition demonstrates that Lieutenant Lindsey acknowledged using the specter of the death penalty in implying to Everett that Everett could avoid the death penalty by making a statement.
Everett’s claim is seemingly a newly discovered evidence claim. It is thus procedurally barred because “claims of newly discovered evidence should be raised in a postconviction motion filed pursuant to rule 3.850 rather than in a petition for habeas corpus.” Thompson v. State, 759 So.2d 650, 668 n. 13 (Fla.2000); see also Steinhorst v. Singletary, 638 So.2d 33, 34 (Fla.1994).
Moreover, Everett has failed to show how the deposition of Lieutenant Lindsey is newly discovered evidence, as the deposition is referenced in the record as far back as Everett’s pretrial proceedings. Specifically, at the pretrial suppression hearing, attorney Smith filed Lindsey’s deposition and the court stated, “So, for the record, I have, then, the deposition testimony of Chad Lindsey and Rodney Tilley.” In its order denying Everett’s motion to suppress, the trial court stated that it had heard argument of counsel and had “reviewed ... the depositions of Rodney Til-ley and Chad Lindsey dated August 6, 2002.” Accordingly, Everett’s claim is procedurally barred on. this additional ground. See Glock v. Moore, 776 So.2d 243, 251 (Fla.2001) (“[A]ny claim of newly discovered evidence in a death penalty case must be brought within one year of the date such evidence was discovered or could have been discovered through the exercise of due diligence.”).
D.Death Penalty Claims
Everett claims that the death penalty as applied in Florida is unconstitutional since it permits a death sentence without a unanimous jury finding as to at least one aggravating circumstance; the jury is not adequately informed of its role; and the jury is not informed that a life sentence for a capital offense is without the possibility of parole. For the reasons we have already set forth, we reject these claims.
E.Lethal Injection Claims
Everett claims that the use of lethal injection as a method of carrying out the death penalty is cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution. For the reasons we have already set forth, we reject these claims.
F.Cumulative Error
Everett argues that the cumulative effect of all errors in his case warrants relief even if no claim individually warrants relief. This Court found no reversible error on direct appeal, see Everett, 893 So.2d 1278 (Fla.2004), and Everett has not demonstrated in the current proceedings that *488 any additional error occurred that was not considered on direct appeal. Thus, Everett is not entitled to relief on the basis of cumulative error. See, e.g., Owen, 986 So.2d at 556-57.
G. Issues Not Previously Discovered
Everett seeks to preserve his right to raise any claim which he has not yet presented, even if such claim could have been discovered but was not discovered by good-faith omission or neglect. We reject this claim. Everett is not exempt from the rules of procedure and this Court’s caselaw. Thus, as this Court has repeatedly held, Everett may not later bring any claim that could have and should have been raised on direct appeal. See, e.g., Miller v. State, 926 So.2d 1243, 1260 (Fla.2006) (“[A] claim that could and should have been raised on direct appeal is procedurally barred.”). Moreover, Everett may not later bring a claim in a successive postconviction motion that could have been raised during the initial postconviction proceeding. See, e.g., Wright v. State, 857 So.2d 861, 868 (Fla.2003) (“We will not entertain a second appeal of claims that were raised, or should have been raised, in a prior postconviction proceeding.”); Downs v. State, 740 So.2d 506, 518 n. 10 (Fla.1999) (stating that claim raised in earlier postconviction motion is barred in subsequent postconviction motion even if based on different facts); Atkins v. State, 663 So.2d 624, 626 (Fla.1995) (explaining that issues that were or could have been presented in postconviction motion cannot be relitigated in subsequent postconviction motion).
IV. CONCLUSION
For the reasons stated above, we affirm the circuit court’s denial of Everett’s motion for postconviction relief and deny his petition for a writ of habeas corpus.
It is so ordered.
CANADY, C.J., and PARIENTE, LEWIS, QUINCE, POLSTON, LABARGA, and PERRY, JJ., concur.

. Although the postconviction court granted an evidentiary hearing on Everett's claims that attorney Smith was ineffective for failing to (1) call Jared Farmer to the stand, (2) have Everett testify at trial, and (3) object that a juror had an inappropriate conversation with a fellow inmate during the trial, Everett abandoned these claims at the evidentiary hearing.
Similarly, although the postconviction court granted a hearing on Everett's claims that attorney Smith was ineffective for failing to (1) challenge the discrepancy between medical examiner Dr. Marie Hansen's deposition testimony and her final testimony, and (2) adequately cross-examine Dr. Hansen, Everett presented no evidence on these issues at the postconviction evidentiary hearing and did not address the issues in his memorandum. Despite this, the postconviction court reviewed the trial record and determined that counsel was not ineffective in the handling of the discrepancy between Dr. Hansen's direct testimony and deposition testimony or in the cross-examination of Dr. Hansen.

. Everett does not appeal the postconviction court’s denial of his claims that attorney Smith was ineffective (1) for “failing to develop a more effective working relationship,” (2) for failing to obtain co-counsel, or (3) based upon his defense strategy.