# FIFTH DISTRICT COURT OF APPEAL
# STATE OF FLORIDA

_____

Case No. 5D22-1279
LT Case No. 05-1998-CF-029288

_____

STATE OF FLORIDA

    Appellant,

    v.

JASON SCOTT DOWNS

    Appellee.


_____


On appeal from the Circuit Court for Brevard County.
Charles G. Crawford, Judge.

Ashley Moody, Attorney General, Tallahassee, and Kaylee D.
Tatman, Assistant Attorney General, Daytona Beach, for
Appellant.

Jason Scott Downs, Melbourne, pro se.

September 15, 2023

ATKINSON, J. ANDREW, Associate Judge.

    The State appeals from the postconviction court's order granting the second motion filed by Jason Scott Downs under Florida Rule of Criminal Procedure 3.850. Downs bore the burden of establishing that there was newly discovered evidence that his counsel failed to convey a plea offer. Because he failed to carry that burden, we reverse.

In 2001, a jury convicted Downs of forcing or enticing a child to commit a lewd, lascivious, or indecent act and of committing a lewd or lascivious act in the presence of a child, *see* § 800.04(2), (4), Fla. Stat. (1998). His judgment and sentences were affirmed per curiam. *See Downs v. State*, 823 So. 2d 789 (Fla. 5th DCA 2002). In 2013, Downs filed a petition for writ of habeas corpus seeking to file a belated motion for postconviction relief pursuant to rule 3.850(b)(3). The denial of the petition was reversed and remanded for further proceedings. *See Downs v. State*, 135 So. 3d 521, 522 (Fla. 5th DCA 2014).

On June 13, 2014, Downs filed his first postconviction motion; among the claims he asserted was that his trial counsel misadvised him to reject a plea offer made by the State, *Downs v. State*, 227 So. 3d 694, 695 (Fla. 5th DCA 2017), which was communicated to him "in the hallway, outside the courtroom" just before trial. In the motion, Downs described the plea offer as "a year probation for battery," which "mean[t] no sex offender registration." He testified that his counsel did not discuss "whether or not there would be a withhold or an adjudication of guilt." In the order denying Downs relief, the postconviction court recounted that Downs "testified at the evidentiary hearing that on the day of trial, . . . trial counsel[] conveyed a plea offer for one year of probation on a battery charge with no sex offender registration requirements" and that trial counsel argued at the sentencing hearing "that the State 'had offered probation withhold, which he [Downs] turned down.' " The postconviction court explained that "it appears that some sort of plea offer involving one year of probation with a withhold of adjudication was most likely made to the Defendant and the Defendant rejected that offer" but did "not find the Defendant's testimony credible concerning [trial counsel] telling the Defendant he would not receive a sentence greater than the plea offer if he lost at trial." This court affirmed the denial of that claim without discussion. *See id.*

Downs filed a second postconviction motion on February 28, 2020, in which he alleged, among other things, there was newly discovered evidence that his trial counsel was ineffective. *State v. Downs*, 333 So. 3d 245, 246 (Fla. 5th DCA 2021). The claim was based upon an affidavit of Judge Bruce Jacobus, who presided over Downs' original 2001 trial. *Id.* In his affidavit, Judge Jacobus

2

represented that he had heard a plea offer in open court on the day of trial which Downs' trial counsel failed to convey to Downs. The postconviction court summarily granted Downs' motion without holding an evidentiary hearing, concluding merely that Downs "did not receive a fair trial and is entitled to relief." *Id.*

On appeal, this court noted that "the postconviction court did not make any factual findings in the written order, and there are no oral findings to turn to because the court did not conduct an evidentiary hearing. The court did not even explicitly conclude that it found that there was ineffective assistance of counsel." *Id.* at 248.

> The record demonstrates that the issue of trial counsel's failure to relay the plea offer was specifically addressed at the evidentiary hearing for Downs' first postconviction motion and that Downs testified he was aware of the plea offer and discussed it with trial counsel. It is unclear whether Judge Jacobus' affidavit refers to the same offer or another offer because the postconviction court failed to make any factual findings.

*Id.* at 246 n.1. This court reversed and remanded for an evidentiary hearing so that the postconviction court could make the requisite factual findings. *Id.* at 248.

On remand, the postconviction court held an evidentiary hearing during which Judge Jacobus testified that on the day of the 2001 trial the assistant state attorney disclosed in open court that there was a plea offer for "[a] nonsexual misdemeanor with one year probation, and a withhold" but did not state the exact crime. Judge Jacobus testified that Downs' counsel, without consulting with his client, responded, "that's totally ridiculous, he's innocent, we're going to trial." When asked about whether he was privy to the plea-offer discussion that occurred between Downs and his trial counsel in the hallway, Judge Jacobus admitted that he was not present for that discussion, and he had

3

"no idea" whether that involved the same plea offer as the one announced by the State in open court.[1]

---

[1] Judge Jacobus' hearing testimony made it apparent that, at the time he executed his affidavit and later testified for the most recent postconviction proceeding, he was also unaware that a plea offer had been the subject of Downs' prior 2016 postconviction proceeding and did not recall that a rejected plea offer had been discussed during Downs' 2001 sentencing hearing:

> Q. Okay. And I would point to [the 2016 transcript of the hearing on Downs' first postconviction motion]. [Postconviction counsel] says, okay, on the day of trial, prior to trial, was there a plea offer conveyed. And Mr. Downs says, yes. So you did know that?
> A. Yeah, I knew there was a plea offer conveyed. It was in the courtroom. I was sitting there.
> Q. Okay. Then [postconviction counsel] follows up and says[,] . . . "Did he talk to you at the time? Where were you when [trial counsel] conveyed this plea offer?" And . . . Downs says, "right out, right out in the hallway outside the courtroom." Were you aware of that?
> A. No.
> Q. So when you signed your affidavit you were not aware that Mr. Downs had that plea offer conveyed to him outside in the hallway?
> A. Correct.
> Q. And so when he wrote the affidavit, or he typed up the affidavit did he take the time to correct you and say, wait a second, I already testified in 2016 that I was out in the hallway when that offer was made to me?
> A. He didn't say that.
> Q. He didn't tell you that, did he?
> A. No.
> Q. So is that maybe another part of your affidavit that could stand to be corrected?
> A. No.

Q. Well, maybe Mr. Downs should have told you that there was contrary evidence to what you were writing in your affidavit?

A. Yeah, probably.

Q. Okay. So now you were . . . obviously the sentencing judge in this case too; correct?

A. Correct.

Q. And are you aware that, or in your review [before signing the affidavit and testifying during the postconviction proceeding] did you review the sentencing transcript . . . of the sentencing you conducted?

A. No.

Q. Okay. Okay. Now I'm referring to . . . the sentencing transcript from . . . 2001 . . . . Judge Jacobus, were you aware that [trial counsel] stated to you, and the State had offered probation, withhold, which he turned down?

A. Which, what now?

Q. He turned down.

A. I didn't read the transcript. I knew, yeah, I knew, I read – I mean, I guess what I'm saying is I knew that [there was] a plea and it had been turned down.

Q. You're saying you knew there had [been] a plea, [and] it had been turned down?

A. Well, it was turned down in the courtroom, by . . . – but it was [trial counsel that] did it, as far as I remember.

Q. As far as you remember?

A. Correct. . . . I know that part that I personally saw was [trial counsel] turned it down without communicating with Mr. Downs or his parent in my courtroom.

Q. Okay. And so you're also, so you're saying Mr. Downs was in the courtroom?

A. When it happened?

Q. Yes.

A. Yes, . . . but he was sitting at the table. His parents were back there. . . .

5

Q.  Okay.  But you weren't aware of the communication that took place outside the courtroom?

A.  That part I did not know.

Q.  Okay.  And so [trial counsel] is mentioning it at the sentencing to you?

A.  Well, he said, I mean, that's what he said, he turned it down, but, I must of heard it.

Q.  You what?

A.  I – it was said in my courtroom, I'm sure I must of heard that.

Q.  Okay.  And then . . .  [in] that same [sentencing] transcript, . . . [trial counsel] says to you: "But as the [c]ourt recalls there was an offer for probation."  Okay.  So do you recall that or – do you recall that?

A.  Do I recall him saying that, or do I recall that there was an offer for probation?

Q.  Do you recall that from the sentencing transcript?

A.  No.

Q.  So, again, the sentencing transcript is not something you reviewed?

A.  Correct. . . .

Q.  Okay.  So . . . the uncle of Mr. Downs[] testified at the sentencing hearing before you. . . .  The uncle is telling you, and he's saying, was saying you, being Jason Downs, you need to make sure you believe – to make sure what you believe in is right and stick to your guns.  He did that and avoid[ed] several plea offers, as his lawyer said down to the misdemeanor, no jail time.  And because of my guidance, he goes on to say, part of my misdirection, he didn't, he didn't plea.  So again there's another reference to a plea that Mr. Downs was turning down, and this is brought up in the sentencing transcript to you, and you don't recall that?

A.  I don't remember – here's what I knew, . . . and I've said it many times, the only thing I knew is what was said in the courtroom, and that was that there was a plea to a misdemeanor of a nonsexual

6

We apply a two-prong standard of review to an order granting a motion for postconviction relief, deferring to the postconviction court's findings on factual issues where there is competent, substantial evidence to support them, and reviewing de novo its conclusions regarding the deficiency and prejudice prongs of *Strickland v. Washington*, 466 U.S. 668 (1984). *See Downs*, 333 So. 3d at 247 (quoting *Everett v. State*, 54 So. 3d 464, 472 (Fla. 2010)).

> To prevail on a postconviction claim based on newly discovered evidence, a defendant must prove two things: (1) that the evidence was not known to the trial court, the defendant, or counsel at the time of trial, and it could not have been known through diligence, and (2) that the evidence is of such a nature that it would probably produce an acquittal on retrial.

*Schofield v. State*, 311 So. 3d 918, 921 (Fla. 2d DCA 2020). Downs raised an ineffective assistance of counsel claim as to the hallway plea offer in an earlier postconviction motion. "[R]ule 3.850 permits a court to dismiss a second or successive postconviction motion if the motion raises claims that have already been decided on the merits in a prior proceeding." *DeCola v. State*, 344 So. 3d 598, 600 (Fla. 2d DCA 2022) (citing Fla. R. Crim. P. 3.850(h)(2)).

So, Downs' claim that his counsel was ineffective for failing to discuss the plea offer conveyed in open court cannot succeed unless he proved that it was a different offer than the one communicated to him in the hallway. This is for two reasons: (1) because if it was not a different plea, then it cannot constitute

---

nature, one year probation, and [trial counsel] turned it down with no communication. So I was aware that there was a plea offer, kind of what it was, not totally, because I never knew what they – they never said, [the prosecutor] never said what the crime was, just a misdemeanor of a nonsexual nature.
Q. Okay.
A. So, I knew that. I mean, I knew there was a plea that had been turned down. Now the other part I didn't know, obviously.

7

newly discovered evidence, and (2) if it was the same plea conveyed to Downs and rejected by him in the hallway, then counsel cannot have been ineffective for failing to convey it to him again when it was allegedly discussed in Judge Jacobus' presence in the courtroom. And it is not enough that Downs merely raise a doubt as to whether the plea agreements were the same because he bears the burden of proof at the evidentiary hearing. *See*, *e.g.*, Fla. R. Crim. P. 3.850(f)(8)(B) ("At an evidentiary hearing, the defendant shall have the burden of presenting evidence and the burden of proof in support of his or her motion, unless otherwise provided by law."); *Tribbitt v. State*, 339 So. 3d 1029, 1033 (Fla. 2d DCA 2022) ("Mr. Tribbitt would be required to prove at an evidentiary hearing that the twenty-year plea offer existed."); *Green v. State*, 857 So. 2d 304, 305 (Fla. 2d DCA 2003) ("Green had the burden of proving his claim of ineffective assistance of counsel."); *Morgan v. State*, 912 So. 2d 642, 643 (Fla. 5th DCA 2005) ("Morgan offers no allegation about how he obtained the information about a plea offer, why he could not have obtained it earlier, nor why his counsel-trial or appellate-could not have done so, by the use of due diligence within the two year time period for filing a rule 3.850 motion.").

At the evidentiary hearing, all Downs proved was that the plea that Judge Jacobus recounts being discussed in open court but purportedly not conveyed to Downs *might* have been different than the plea admittedly conveyed to Downs in the hallway.[2] However,

---

[2] Judge Jacobus's testimony was far from definitive on the matter, as the following excerpt exemplifies:

Q. So, just to clarify, we mentioned the plea that was offered in your presence that wasn't conveyed to me [Downs], they were not specific as to what the charge was.
A. No.
Q. Other than it was a misdemeanor nonsex offense; is that correct?
A. That's correct.
Q. Thank you. And you've heard discussion about a plea that happened in the hallway. You weren't in the hallway, you don't know what happened in the hallway; is that correct?
A. I did not.

8

the record indicates that the open-court plea offer is *at least* as likely to have been the same one that Downs admitted to rejecting in the hallway. In other words, Downs established only the *possibility* that what Judge Jacobus testified to was newly discovered evidence of a plea offer different than the offer that was already the subject of his previous postconviction motion. That alone compels the conclusion that Downs failed to meet his burden. *See Maharaj v. State*, 778 So. 2d 944, 951 (Fla. 2000) ("Postconviction relief cannot be based on speculation or possibility."); *Johnson v. State*, 452 So. 2d 1035, 1035–36 (Fla. 4th DCA 1984) ("[A]ppellant's testimony reflects a complete lack of familiarity with the plea negotiations, so that the trial court would have had to speculate as to what appellant would have done had he been properly advised.").

However, what the record actually shows is that it is more likely that the plea offer recounted by Judge Jacobus was the same plea offer rejected in the hallway. The only *evidence* adduced at the hearing on Downs' previous postconviction motion suggests that the hallway plea offer is no different than the plea offer Judge Jacobus described taking place in the courtroom. The open court plea described by Judge Jacobus was for an unspecified misdemeanor, not requiring sex offender registration, a withhold of adjudication, and a year of probation. The hallway plea involved battery—although it is unresolved whether it was a felony or a misdemeanor—no sex offender registration, and a year of probation.

Undeniably, both the hallway plea and the open court plea involved a sentence of one year of probation without sex offender registration. Downs argues that the plea offers differ with respect to the withhold of adjudication—Judge Jacobus testified that the open court plea involved a withhold of adjudication, but Downs testified at the earlier evidentiary hearing regarding the hallway plea that his counsel did not mention whether or not adjudication would be withheld. However, there is nothing to indicate that the hallway offer did *not* involve a withhold of adjudication. To the

---

Q. So, to the best of your knowledge it could have been a separate, different plea offer that was made in the hallway?

A. I have no idea what it could have been.

9

contrary, the record suggests that the hallway offer *did* involve a withhold of adjudication. In Downs' rebuttal to the State's written closing argument in the first postconviction evidentiary hearing, Downs himself described the plea offer as one with a "withhold of adjudication." He explicitly indicated that "there was a withhold of adjudication with the offer." He asserted, "It has been established that the plea offer was for battery, a year of probation, a withhold of adjudication and no sex offender registration." And he also referred to the sentencing hearing after the 2001 trial at which trial counsel had advised the trial court that there had been "a plea offer for probation and a withhold." And in the order on the previous motion for postconviction relief, the court suggested a finding that there was "some sort of plea offer involving one year of probation with a withhold of adjudication" that "was most likely made to the Defendant and the Defendant rejected that offer." As such, Downs' argument that the pleas can be differentiated based on whether each did or did not include a withhold of adjudication is meritless.

Downs also contends that the plea offers are different because the hallway plea offer was for battery without mentioning the severity of the offense, whereas the open-court plea involved an unspecified misdemeanor. There is *nothing* to indicate it is more likely that the plea conveyed in the hallway was to a felony rather than a misdemeanor battery. However, there is support indicating that the hallway plea *was* a misdemeanor battery. Downs' uncle testified at sentencing that Downs rejected several plea offers "down to the misdemeanor, no jail time." Notably, in his written rebuttal to the State's written closing argument after the first postconviction evidentiary hearing, Downs is agnostic regarding whether the charge was a felony or misdemeanor, but he was sure that it was a battery that included a withhold of adjudication, opining that it "matters not whether the offer was felony battery or misdemeanor battery, especially considering there was a withhold of adjudication with the offer."

In support of his argument that the plea offer Judge Jacobus overheard in open court was different than the hallway plea offer, Downs emphasizes that in the order on appeal, the postconviction court made a finding that the hallway plea offer was for "18 months['] probation for an aggravated assault." Yet, this reliance disserves his argument by highlighting the postconviction court's

10

mistaken interpretation of the record evidence. The postconviction court relied on a misreading of hearsay in an affidavit submitted by Downs with his petition for writ of habeas corpus seeking to file a belated postconviction motion; in that affidavit, the affiant—the assistant public defender assigned to represent Downs in the appeal from his judgment and sentence—recounts having been "informed" by Downs "that his trial attorney . . . advised him against a plea offer of 18 months['] probation to the lesser offense of assault, which would preclude any sex offender registration." The postconviction court's reliance on this affidavit is problematic for several reasons, including that, unlike the postconviction court's finding, the affidavit does *not* describe the "hallway plea" offer as having been to an *aggravated* assault. Thus, the contention that the hallway plea offer and the open court plea offer must be different because the former was a felony and the latter was a misdemeanor cannot be supported by the affidavit; the affidavit merely recounted that the plea offer was "to the lesser offense of assault," giving no indication whatsoever that charge was for aggravated assault or any other felony.

Even more damning is the irreconcilability of the appellate counsel's affidavit with the evidence and argument Downs would later present during his first postconviction proceedings, which ubiquitously describe the "hallway plea" offer as having been to a *battery* for *twelve months*' probation—not to the assault for eighteen months' probation described in the affidavit. Downs' first postconviction motion describes the hallway plea offer as "a year probation for 'battery' . . . mean[ing] no sex offender registration" permitting him to "get [his] record cleared." Downs *himself* would later testify at the hearing on the first postconviction motion that the plea offer that was conveyed to him in the hallway was to *battery* for *twelve* months of probation. In Downs' written closing argument and rebuttal to the State's closing argument in the first postconviction proceeding, Downs refers to the plea offer as "battery, a year of probation, a withhold of adjudication and no sex offender registration." Yet, in reaching its finding regarding the nature of the hallway plea offer, the postconviction court's order seemingly ignores all of the evidence and argument at Downs' first postconviction proceedings and cherry-picks one incompatible assertion in a previously filed affidavit which the court misread to indicate a felony when it only indicated a simple assault. *Compare* § 784.021(2), Fla. Stat. (1998) ("Whoever commits an aggravated

11

assault shall be guilty of a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084."), *with* § 784.011(2) ("Whoever commits an assault shall be guilty of a misdemeanor of the second degree, punishable as provided in s. 775.082 or s. 775.083.").

Downs also argues that a statement made by his counsel at the 2001 sentencing hearing supports the conclusion that there were two separate plea agreements, the one in the hallway and the one in open court. At the 2001 sentencing hearing, Downs' trial counsel explained to the court that he knew Downs would not "take a misdemeanor [plea offer] because he wasn't guilty of anything." Trial counsel's basis for this assertion was that "[t]he State had offered probation withhold, which he turned down." This suggests that counsel was arguing to the court that Downs had rejected a misdemeanor plea offer of probation with a withhold of adjudication. Yet, Downs counterintuitively argues on appeal that this statement indicates that the hallway offer was for a felony and the open-court plea offer was for a misdemeanor. However, this is a non-sequitur: Because my client turned down an offer to plead to a felony, "[t]hat told me he wouldn't take a misdemeanor." The intuitive inference is that counsel was saying he understood—i.e., "[t]hat told me"—that Downs would not take a misdemeanor because he had *already turned down a misdemeanor* with a probation sentence and a withhold of adjudication. The antecedent to the relative pronoun "That" is the statement, "the State had offered probation withhold, which he turned down." If the "probation withhold" plea offer was to a *felony*, how could Downs' rejection of such an offer *tell* his attorney—i.e., cause his attorney to understand—that Downs would also reject an offer of a misdemeanor—i.e., a *lesser* offense? To interpret trial counsel's statement as such would defy common sense. This argument, like the postconviction court's misreading of the hearsay in the appellate counsel's affidavit, fails to support a conclusion that the plea offer Judge Jacobus recalls being discussed in open court prior to the 2001 trial was a different plea than the one conveyed to and rejected by Downs in the hallway before the trial began.

There is *no evidence* that the plea offer conveyed and rejected in the hallway was different than the open-court plea offer. All the evidence supports the State's theory that what Judge Jacobus recalls being discussed in open court in 2001 was the same plea

12

offer that Downs admits to having himself rejected in the hallway before trial—the same plea offer that was already the subject of extensive litigation during Downs' previous postconviction proceedings. Against that likelihood, Downs has done nothing more than to surmise a speculative possibility that the plea offers could have been different. And the postconviction court concluded that they were different based on the mention in an affidavit of a plea offer to assault for eighteen months' probation that the court misread to indicate an *aggravated* assault—and which was later contradicted time and again by contrary evidence and argument presented by Downs himself that the plea offer was to a battery for twelve months' probation (which, importantly, is compatible with Judge Jacobus's description of the purportedly newly discovered plea offer). The trial court's finding is not supported by competent, substantial evidence; it is based on a misreading of evidence and *contradicted by* competent, substantial evidence.

Downs has already asserted a postconviction claim of ineffective assistance of counsel based on a plea offer he admits to receiving and rejecting but about which he argued he was misadvised by counsel. In order to avoid having this successive postconviction claim barred, he had the burden to establish that it involved newly discovered evidence. He tried to establish that the plea offer about which Judge Jacobus testified was newly discovered because it was not the same plea that was the subject of his last postconviction claim. He failed to do so. What he contends is competent substantial, evidence of a newly discovered, different, unconveyed plea offer is merely speculation based on misconstrued hearsay allegations in an affidavit contradicted by fragmental recitations of the previous plea offer which are in no way irreconcilable with the plea offer discussed by Judge Jacobus. In other words, not only is the postconviction court's factual finding and legal conclusion based on a misreading of an affidavit filed before the prior postconviction proceedings even began, but the finding and conclusion are also in derogation of the evidence subsequently admitted and the arguments later presented during those prior postconviction proceedings. The order on appeal was not based on competent, substantial evidence, and its conclusion that newly discovered evidence of an unconveyed plea offer justified a successive claim of ineffective assistance of counsel was erroneous.

13

Because Downs failed to establish that the plea discussed in Judge Jacobus's testimony constituted newly discovered evidence of a plea offer his trial counsel failed to convey to him, Downs failed to prove ineffective assistance counsel and failed to establish that his claim was not successive. We, therefore, reverse the order granting his postconviction motion and direct the postconviction court to dismiss his claim.

REVERSED AND REMANDED.

NORTHCUTT, STEVAN T., and LAROSE, EDWARD C., Associate Judges, Concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____